TYREE et al. v. ROAD DIST. NO. 5, NAVARRO COUNTY, et al. (No. 7916.)

(Court of Civil Appeals of Texas. Dallas. Nov. 24, 1917. Rehearing Denied Dec. 22, 1917.)

1. APPEAL AND ERROR ⧯⧫756 — BRIEFS — ORDER ON TEMPORARY INJUNCTION.

On appeal under Vernon's Sayles' Ann. Civ. St. 1914, art. 4644, from order on temporary injunction, which article 4645 provides shall be heard on bill and answer, and the affidavits and evidence admitted at trial, without briefs, save that appellant may file a brief on furnishing appellees with a copy, appellant having elected to

brief the case, the brief need not comply with the rules for ordinary appeals, and so need not be based on assignments of error.

2. PARTIES ⊚⟿40(2)—INTERVENTION—INTEREST IN SUBJECT-MATTER.

Landowners and taxpayers in a road district are interested in the subject-matter of a suit, which is where a road shall be located, so as to be entitled to intervene.

3. PARTIES ⊚⟿38 — INTERVENTION — REASON FOR REFUSING.

That the board of a road district has power to defend a suit to enjoin location of a road according to the plan adopted by it, and to compel its location elsewhere, is no reason why landowners and taxpayers, approving the adopted location, may not intervene.

4. APPEAL AND ERROR ⊚⟿958—INTERVENTION —DISCRETION OF COURT.

While there should be some reasonable limitation on the number who may intervene in a proceeding affecting the general common interest, rather than the individual, the number allowed to intervene not materially adding to the costs, the discretion involved will not be interfered with.

5. HIGHWAYS ⊚⟿91 — STATUS OF BOARD — "QUASI PUBLIC CORPORATION."

The board of a road district, which under Sp. Acts 33d Leg. c. 95, consists of certain county officers, and others that they may select, and is given entire charge of the laying out and construction of the roads of the defined district, authority to employ an engineer, duty on his report to make such adoption as may seem best to them, power to condemn land, and to use convicts in road building, and whose members are required to give bond, is a "quasi public corporation."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Quasi Public Corporation.]

6. HIGHWAYS ⊚⟿44(1)—PROMISES AS TO LOCATION—EFFECT ON BOARD.

Promises as to location of road made by one group of voters to another to induce votes for creation of a road district are not binding on the district board, a public corporation intrusted with discretion as to location of roads.

7. CONTRACTS ⊚⟿123(1) — VALIDITY — INJURY TO PUBLIC SERVICE.

Any agreement in advance of formation of a road district by those who automatically become members of the district board, intrusted with power of locating roads as they deemed best, as to where roads should be located, is void as against public policy.

8. HIGHWAYS ⊚⟿64—LOCATION—DISCRETION OF BOARD—INTERFERENCE BY COURT.

The discretionary powers conferred by the Legislature on the board of a road district as to location of roads cannot be interfered with by the court, save where the power conferred is exceeded, fraud is imputed and shown, or there is a manifest invasion of private rights.

9. HIGHWAYS ⊚⟿44(1) — LOCATION — BOARD AGREEMENT TO ARBITRATE—DELEGATION OF POWER.

Any agreement by the board of a road district, intrusted with discretion of location of a road as it may deem best, to arbitrate its location, is void, as a delegation of the power given it by the Legislature.

10. HIGHWAYS ⊚⟿44(1) — LOCATION — CONDITION.

Location of road by a road district's board is not invalid because on the condition that the right of way be donated.

11. INJUNCTION ⊚⟿135 — DISCRETION IN GRANTING.

Injunction is not a matter of right, but is in the sound discretion of the judge, unless the facts on which it is sought present solely questions of law.

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Suit by B. F. Tyree and others against Road District No. 5, Navarro County, and others, others intervening, for injunction and mandamus. From an adverse judgment, plaintiffs appeal. Affirmed.

Richard Mays, of Corsicana, for appellants. R. E. Prince, R. S. Neblett, and Dexter Hamilton, all of Corsicana, for appellees.

RASBURY, J. By special act of the Legislature Navarro county, or any political subdivision, or defined district therein, is authorized to issue bonds for the purpose of constructing public roads, to levy and collect taxes to pay interest thereon, and to create a sinking fund for the redemption thereof, when approved by a two-thirds majority of its resident property taxpayers, qualified voters, at an election held for that purpose upon petition of a specified number of voters, in the manner and under the regulations provided by the act. Special Laws Reg. Sess. 33d Leg. 372; volume 16, Laws Texas. By the provisions of the act, when an election held in any political subdivision or defined district of the county is in favor of the bonds, the county judge, the county commissioner of the precinct in which such subdivision or defined district is situated, the county auditor if there be such officer, and two citizens of the political subdivision or defined district, to be selected by a majority vote of all elected county commissioners, become a board for such district. Such an election was held in a defined district in Navarro county, designated in the record as road district No. 5, whereat the issuance and sale of $100,000 of bonds for road-buildng purposes was authorized. Thereafter the county commissioners selected the two citizens provided for, who, with the others named, constituted the district board. Such board by the act has "entire and exclusive charge, control and management of all matters, pertaining or relating to the laying out and constructing of the permanent roads of such * * * political subdivision or defined district," as well as the authority to employ a competent, experienced, and skilled highway engineer, whose duty it is, under the direction and control of the board, to make a complete and accurate survey of a system of roads, upon direct and alternate routes, and to file with the board detailed field notes, maps, profiles, working plans, specifications, estimates, etc., whereupon it is the duty of the board to take his reports, etc., under advisement, and after full consideration and investigation "to adopt such maps, profiles, plans and specifications as may seem best to them." In the exercise of the power conferred upon them the board sold the bonds, employed an engineer, and

⊚⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

upon his reports and after public hearings adopted a road system for the district. Among other roads adopted by the board is one which begins at Dawson, a town near the north line of the district, and runs due east for some distance. About this road there is now no controversy until it reaches a given point. At this point two roads were proposed, both diverging from the point indicated, one designated as road No. 5, and one as road No. 6, both running in a general southeastern direction, and both converging at a common point about five miles distant from the point of divergence. The board selected road No. 5. Thereupon this suit was instituted by appellants, B. F. Tyree and others, against appellees, road district No. 5 and five individuals or commissioners constituting the board, the purpose being, among other things, to prevent by injunction pendente lite and by perpetual injunction finally the location and construction of road No. 5 and to compel by mandamus the location and construction of road No. 6. Upon presentation of the petition to the district Judge Hon. H. B. Davis, interlocutory injunction maintaining the status quo was ordered pending full hearing, a day for which was set. Pending such hearing Alfred Luckey and 148 others intervened in the suit opposing the relief sought by the appellants. Upon hearing the interlocutory injunction was dissolved, and the temporary injunction pendente lite was refused, save as to road No. 5 and road No. 6 from the point of divergence to the point of convergence, the construction of either of which was temporarily enjoined pending this appeal upon appellants giving bond in the sum of $1,000. The bond was given and appeal perfected to this court under the provisions of articles 4644, 4645, Vernon's Sayles' Civ. Stats.

[1] Both sides present preliminary issues involving matters of practice, the first to be considered being the objection of the interveners to any consideration of appellants' brief, because the issues presented therein are not grounded upon any assignment of error filed in the court below or upon any action of the court disclosed in any finding of fact or conclusion of law. The facts comprehended in the objection are true. Article 4644, Vernon's Sayles' Civ. Stats., provides for an appeal from any order granting, refusing, or dissolving a temporary injunction when transcript is filed in this court within 15 days from the entry of such order. Article 4645, Id., provides, in substance, that the case shall be heard on the bill and answer, and the affidavits and evidence admitted at trial, without brief, save that appellant may file a brief upon furnishing appellees with a copy thereof within two days of submission. Such are the plain provisions of the statutes governing such appeals and being a special remedy necessarily control any general statutes or rules concerning similar remedies. Counsel for interveners argue, however, that having elected to brief the case, the brief should have conformed to the rules provided for in ordinary appeals, that is to say, should have been based upon assignments of error. We think not. While the habit has grown in our practice of developing such proceedings in the same manner that they are ordinarily developed on final trial, nevertheless assignments of error in such trials are not required, and when the appellant elects to brief the case, he is at liberty to brief it in such manner as seems best to present his view of the issues, which is not a bad rule in any case, and is not expected to include in the brief that which is not required in the court below. In all other respects the brief is an intelligent and orderly presentation in the usual way of the issues raised, and which, if the objections were sustained, it would be our duty to segregate, arrange, and consider upon the whole record.

[2, 3] Another preliminary question raised by appellants is, in substance, that the court erred in overruling appellants' exception to the intervention of Luckey and his 148 co-interveners, on the ground that their pleading failed to disclose any right to participate in the litigation. The substance of the allegations of interveners showing their interest in the controversy is that they are residents, property owners, and taxpayers of road district No. 5, and that the road adopted by the board when constructed will most completely and most beneficially serve as a whole the people residing in the district, and that any interference with the action of the board would cause great inconvenience and loss to the people. The right of intervention in a pending suit has long been a recognized remedy (Whitman v. Willis, 51 Tex. 421), and is now conferred in this jurisdiction by statute which in substance provides that any person may intervene in any pending suit in term time or in vacation. Article 1824, Vernon's Sayles' Civ. Stats. There have been many decisions adjudging the right under varying facts, a recitation of which would be without interest. The rule deducible from the cases is epitomized in the statement that:

"If the interest of the * * * intervener is in the subject-matter the rule is almost universally recognized that he may intervene at any time," * * * unless his interest is "merely in the thing, and not in the particular rights, wrongs and remedies which are being litigated." Townes' Texas Pleading, 293.

The inquiry then is: What was the subject-matter of the suit, and did the interveners have an interest therein? The subject-matter of the suit, it occurs to us, was the route or location or situs of the public road, as distinguished from how or when it was to be constructed, that is to say, the "thing" itself. Interveners were property owners and taxpayers within the district where the road was located and subject to the tax levied to pay the interest on and ultimately redeem the bonds, and alleged that the board so located road No. 5 as to best serve the convenience

and beneficial interests of the people as a whole, and that any other location would irreparably impair such convenience and beneficial interests. While the allegations are general, we think they are sufficient to disclose a real interest in the subject-matter of the suit, that is, the rights, wrongs, and remedies asserted by the parties to the suit at the time of intervention, since it can be fairly said that, if those who pay the taxes to construct public roads are not interested in the location, situs, or route of the roads, then there is no one who, from a legal standpoint, can be said to be interested. In such connection it is argued, however, that the exception should have been sustained because the board had full power to defend any action relating to the authorized acts of the corporate entity, in the absence of any claim that it would not and could not properly defend the litigation. While we do not find in the act express authority conferred upon the board to maintain or defend litigation affecting acts done within its authority, we think with counsel, for reasons stated at another place, it did have such authority. We conclude, nevertheless, that such authority was not exclusive of the rights of those showing an interest in the litigation to assert it. It seems that when the state, and by analogy any instrument thereof, sues or permits itself or other corporate body to be sued, the test of the right to intervene undergoes no change. Herndon v. Robertson, 15 Tex. 594; 14 Standard Enc. Proc. 310.

[4] While we think, as indicated, that interveners disclosed that interest in the subject-matter of the suit contemplated by the rule, we also think that in a proceeding which affects the community or general common interest, rather than the individual, there should be some reasonable limitation of the number who may intervene. Interveners are not unlike plaintiffs and defendants; in fact, the statute permitting intervention does not attempt to fix the status of interveners or regulate the number who may intervene, and the cases before and following the enactment of the statute have determined that right purely upon equitable principles. Hence in this character of case we say interveners occupy largely the position of one or more persons who sue or defend as the representatives of a class. In that type of case it is said that:

"The test of what amounts to an impracticable number, permitting one to sue for all, varies with the circumstances of each case." 30 Cyc. 136.

The authority quoted notes the fact that an able court in one instance required that as many as 250 should be parties to the suit, while in another case the same court said:

"Seventy-five persons is surely a very large and unwieldy number of persons to join in an action where it is practicable for a few to settle the controversy for the benefit of all." Hodges v. Nalty, 104 Wis. 464, 80 N. W. 726.

As said in the case just cited, it is difficult to strike a precise rule, but we think in this proceeding that the number of appellants who brought the suit for the class opposing the action of the board is a more practicable and intelligent exercise of the right conferred than is the large number who intervened to sustain the action of the board. At the same time, in view of the discretion of the trial judge in such matters, and the fact that the number of interveners can affect, at most only the question of costs, which does not substantially add to such expense, since their intervention was voluntary, and did not require the issuance of process, we conclude that in this particular case we would be justified in neither attempting to tax interveners with the costs nor reversing the judgment on that ground.

[5-8] Appellants alleged as basis for the relief sought, among other things, that prior to the creation of road district No. 5 appellants and those they sued for resided in what was known as Purdon road district, now comprising the northeastern portion of road district No. 5. At a time when a road bond election was pending in said Purdon district certain persons, acting for a number of the citizens of road district No. 5, as afterwards created, represented to appellants and the citizens of the Purdon road district that, if they would vote against and defeat the bonds proposed at the pending election, and afterwards join Purdon territory with theirs, and assist in voting bonds in the proposed district, they would locate in the new district substantially the road desired by those advocating the bond issue in Purdon district, such road being similar to road No. 6, referred to in this proceeding, and that, relying on such representations, appellants by their efforts defeated the proposed bonds in Purdon district, and thereafter by like efforts of appellants the new district was created and the bonds carried in road district No. 5, which but for the aid and support of appellants would have been defeated.

The evidence adduced by appellants in support of the foregoing allegations discloses that while the election in the Purdon district was pending certain of the citizens outside of Purdon district, but within road district No. 5, as afterwards created, in mass meeting, organized themselves for the purpose of defeating the bonds in Purdon district, and for the purpose of creating a new district after the defeat of the bonds in the Purdon district, and for that purpose through their committees promised the citizens of Purdon district that, if they defeated the bonds at the pending election and joined in creating the new district, a road of the kind sought by the proposed bond issue would be built for them. The bond issue in Purdon district was defeated. Thereafter those representing the proposed district appeared before the proper authorities and obtained order for an

election therein. After the order for and pending election those authorized by the mass meeting undertook to designate on rough maps or plats the roads that would be constructed if the people would vote for the bond issue, one of which was a road traversing the Purdon district and corresponding with road No. 6. As we have shown, the bonds were voted, and the new district was created. When the board located the roads, it did not locate one in the manner promised by the committee.

Upon the pleading and proof detailed appellants advance several contentions, the effect of all of which is that the district was created and the bonds voted in consideration of the promises involved in the agreement between the citizens of the respective sections of the district, which being true, the board is, in equity, bound thereby, since its corporate existence resulted from the reliance of appellants upon such agreement and without which its existence would have been defeated.

While authority for the creation of road districts, and by necessary implication officials or boards to administer the business of constructing such roads, is found in article 3, § 52, of the Constitution, a careful examination of the special act under which appellee road district No. 5 was created discloses that the Legislature did not define the legal status of the boards therein authorized, that is to say, their legal privileges or liabilities. At no place in the act is it expressly declared that the boards, after they come into existence in the manner provided, shall constitute a body corporate under the name and for the purposes designated in the act with authority to sue and be subjected to suit. Such boards, however, are clearly auxiliaries or instrumentalities of the state, invested with authority to administer and control subordinate local affairs, and are, in our opinion, to be classed, in the absence of legislative definition of their status, as quasi public corporations. 1 Dillon, Mun. Corp. (5th Ed.) 25; Id. 67. In addition to what we have already said concerning the manner in which such boards come into existence, its membership and powers, the act also provides that the members of the board shall execute bond payable to the county judge, conditioned as in cases of county commissioners when acting as road supervisors, and shall receive the same salaries received by members of the county commissioners' court while attending its sessions, confers upon the board authority to condemn land in the same manner that railroads may now condemn for right of way, as well as the right to use convicts in road building upon the same terms that the county may upon its public roads. We have sought the true status of the board for the reason that we consider that fact important in view of counsel's contention that the rule announced

in the texts and cases, of which Railway Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837, is typical, obtains and controls in the instant case. That rule, briefly and generally stated, is that, when private corporations, with knowledge of the facts and after incorporation, adopt the unauthorized contracts of its promoters in order to secure the benefits accruing therefrom, they do so cum onere. While the rule invoked is of undoubted verity, we are unable to comprehend the applicability of that rule here. We are constrained to hold that promises made by one group of voters to another, in order to induce the latter to support and vote for a public measure at a pending election, such as the creation of a public road corporation, are in no respect binding upon the corporation or its members, who, in the exercise of the discretion conferred, deem such promises not for the public good, and that such public corporation and its members in no respect occupy positions analogous to private corporations who adopt the unauthorized acts of promoters. But if it be conceded for the moment that the rule does apply, yet the record fails to disclose that the appellee board in fact adopted the agreement between the groups of citizens, or that, if it had, any benefit would have accrued to the board. On the contrary, if the board took any action in that respect, it was to repudiate such contract. Counsel, however, argues that the board or corporation exists by virtue of such agreement; that is to say, that because of said promises those citizens interested therein induced the qualified voters as a whole to vote the bonds and tax on faith of the promises, and equity requires a compliance therewith. The board as an entity, of course, took no part in any such arrangement, since it was not in existence at the time. The votes for the bonds and tax were legal votes, and whatever may have induced their casting as they were cannot obviously affect the legality of the board or in any manner curtail or limit its rightful functions. Further, we are constrained to and do hold that, if the board or those who automatically became its members had in advance made such an agreement, it would have been void and unenforceable, because opposed to public policy on the ground that the members are public officials charged by law with the performance of public duties requiring the exercise of sound discretion in the interest of the public, and that such contract affected and was calculated to destroy the free exercise of the duty, and would have been an interference with the administration of government, which has always been a ground for invoking the rule of public policy. It has been decided in this state that it is contrary to public policy for a public officer to assign or give a lien upon his unearned compensation, because inconsistent with the public good and calculated to embarrass the officer

in the discharge of his public duties. National Bank v. Fink, 86 Tex. 303, 24 S. W. 256, 40 Am. St. Rep. 833. The reasons against foreclosing such officers' judgment and discretion in advance of his election on questions affecting the public generally, it occurs to us. is a matter of much greater import. Further, it may be said that the relief sought, on the grounds stated, amounts to judicial interference with the discretionary powers conferred by the Legislature upon the board, since, when the granting power confers upon a designated body or auxiliary authority the right to determine the expediency or necessity of measures within the scope of the grant, courts are without authority to interfere, save where such bodies exceed the power conferred, or fraud is imputed and shown, or there is a manifest invasion of private rights. 1 Dillon, Mun. Corp. (5th Ed.) 457.

[9] It was alleged by appellants that pending trial the controversy was submitted to arbitration, all parties agreeing to be bound thereby, and that upon hearing the arbitrators and the umpire selected by them recommended the adoption of road No. 6, which the board declined to do, but which under the agreement to arbitrate it was alleged the board was in law bound to accept. Appellants' evidence on such issue tended to show that when the case was called for trial a large number of interested citizens were present and a lively interest manifested in the matter, coupled with the desire for a settlement of the controversy by some character of compromise, and that the district judge, upon suggestion of counsel, recessed court in order that conferences might be had. Also it appears, after recess of the district court, that County Judge Traylor, a member of the board, which was then in session, in a general discussion about the courthouse, suggested that the factions select committees, and that if an agreement was reached the board would abide by it. A committee of four was finally agreed upon, two representing one side, and two the other, who in turn selected a fifth member. This committee, in effect, selected road No. 6, and so reported to the board. The official action of the board upon the report, whatever may have induced it, as disclosed by its minutes at a first meeting, was that the parties desired to submit a report, but, inasmuch as they were not in agreement, the report would not be considered, and at a second meeting that the report signed by the committee and referred to supra would not be accepted for the reason that: ·

"The board finds upon investigation that said committee does not represent the full citizenship interested in said roads, and therefore the board refuses to adopt the recommendation of the said committee."

The honorable trial judge prepared and filed a written opinion containing conclusions of fact and law, in which he declares, in reference to the matter of arbitration:

"It is a fact * * * that * * * there was considerable talk * * * about a compromise, that is, a location of the road which would be satisfactory to everybody. * * * Certain men were selected, some say by authority, * * * and failed to agree, and called in a fifth man, and they made an award and change of route. * * * It is likewise a fact * * * that the board failed * * * and refused to acquiesce in that compromise."

The pleading and proof so standing, appellants contend that a common-law arbitration binding upon all parties is disclosed, and that the trial judge should have so adjudged.

Without reference to whether the facts related show an arbitration and award or not, we nevertheless conclude that they afford no relief against the action of the board in adopting road No. 5. We have reached such conclusion for the reason that the location of the road was, in our opinion, a matter which could not be lawfully submitted to arbitration. As we have shown at another point in this opinion, the Legislature, by the act referred to, conferred upon the board entire and exclusive charge, control, and management of all matters pertaining or relating to laying out and constructing roads, and directed said board, after the engineer's survey of a system of roads, etc., had been made, to adopt such thereof "as may seem best to them." We have also shown that the board's status is that of a quasi public corporation, to whom the Legislature has delegated the powers enumerated. That an instrumentality of the state to whom the Legislature has delegated certain powers cannot in turn delegate such powers to a board of arbiters is just as sure, we believe, as that only the powers conferred may be exercised by the instrumentality. Yet such would have been the effect of an arbitration of the present controversy, because all that remained for the board to do after the full and extensive report required from the engineer was to exercise their judgment as public officials and select such roads as seemed best to them, which is but to say that they were to exercise a sound discretion upon a public matter in the interest of the public. That fact, we believe, presents an insuperable objection to arbitration. It is the duty and privilege of such boards to meet the responsibility placed upon them by the Legislature, and the rule that their acts in such respect will not be disturbed, save when the grant is exceeded, fraud is imputed and shown, or there is a manifest invasion of private rights, is as well established as the rule that denies them the right to delegate the power transferred to them by the Legislature. The rule forbidding the delegation of delegated powers has been stated many times and in many ways, but is briefly epitomized in the statement that:

"The principle is a plain one, that the public powers or trusts developed by law or charter upon the council or governing body, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others." 1 Dillon, Mun. Corp. (5th Ed.) 460.

In the succeeding paragraph of the authority cited it is declared that any contract, by law or ordinance, which tends to cede away, control, or embarrass the legislative or governmental powers of such corporations, are void as disabling them from performing their public duties. The board could, as an incident to its corporate existence as a matter of course arbitrate or compromise claims by or against it, asserting corporate liabilities or demands. This right presents, in our opinion however, an obviously dissimilar question.

[10] The issue is also made that the court should have granted the relief prayed for for the reason that the location of road No. 5 was on the express condition that the right of way, including cut-offs, should be donated free of charge. The minutes of the board support the claim. We see no reason why the board could not locate the road on the condition stated. We can conceive of many good business reasons why such condition should be included in the order, one important one being that an unconditional location would open the way for exorbitant demands for the land necessary for right of way. We cannot, however, see why such condition would afford ground for injunction. The condition tended to conserve the money of the taxpayer if it had any effect at all. In any event, that fact alone did not, in our opinion, furnish sufficient basis for the relief sought.

[11] The remaining issues present in various ways and from as many angles the contention that the action of the board in selecting road No. 5 was so unjust, unreasonable, and discriminative as to constitute a fraud upon appellants and a confiscation of their property, and hence an abuse of the powers and discretion of the board, and for which it is argued that the trial judge should have at least awarded the writ of injuction pendente lite. Concerning the award of the writ of injunction, it is in substance declared that the writ, being summary and extraordinary, ought not to be awarded except for the prevention of great and irreparable injury, since it does not lie as a matter of right for every injury to the estate or right of another, but is a remedy always within the sound discretion of the judge, unless the facts upon which relief is sought present solely questions of law. 1 R. C. L. 307, 308. The rule stated is the general equity rule, and there is in our statutes no special provision which changes such general rule in cases of the present character. We have read the evidence on the issue presented. To segregate the facts from the mass of evidence and set them out in this opinion would serve no good purpose, since it is only our duty to reach a conclusion upon such facts. It will suffice to say that in adaptation of the trial judge's conclusion the board did not act unwisely or in fraud of appellants' rights or unjustly discriminate against them or their common right to have the roads so located as would reasonably best serve the interest of the community as a whole.

The judgment is affirmed.