**TIPPETT et al. v. GATES et al.** (No. 8385.)

(Court of Civil Appeals of Texas. Dallas. June 19, 1920. Rehearing Denied July 3, 1920.)

1. **Highways** ⬅⮞107(1) — **Agreement of commissioners as to location of road prior to bond issue election not authorized.**

An agreement by road commissioners of road district created by Loc. & Sp. Acts 33d Leg. (1913), c. 60, prior to the bond issue election, obligating them to locate the road along a particular route, was not authorized by the amendment to the Road Law by Loc. & Sp. Acts 35th Leg. approved Feb. 10, 1917 (Laws 1917, c. 8), though it would not prevent them from constructing the road in the agreed manner if in the exercise of their discretion.

2. **Pleading** ⬅⮞214(1)—**General demurrer admits allegations not reached by special exceptions.**

Allegations of the petition not reached by special exceptions are taken as true on general demurrer.

3. **Highways** ⬅⮞103—**Taxpayers entitled to enjoin construction of road improperly located by commissioners.**

When contest as to legality of construction of road by commissioners of district involves common or general interest of a section of the public to whom injury is alleged to have been done by an illegal agreement of the commissioners, prior to election, to locate the road on a particular route, the courts will recognize the right of the taxpayers to maintain suit to enjoin such construction.

4. **Pleading** ⬅⮞11—**Allegations of gross abuse of discretion by road commissioners not conclusions.**

Allegations of gross abuse of discretion by road commissioners of fraud, etc., in petition of taxpayers of county to enjoin construction of road along route, which commissioners prior or to election agreed to adopt, *held* not mere conclusions of the pleader, in view of the allegations of facts involved as constituting abuse of discretion and fraud; for only ultimate facts need be stated in a pleading, and details and minute circumstances should be omitted.

5. **Injunction** ⬅⮞79—**Courts may interfere in case of gross abuse of discretion by road commissioners.**

The courts of Texas have the right and are under duty to interfere by injunction at the instance of taxpayers in case of gross abuse of discretion, fraud, or perversity of will on the part of commissioners of road district in locating a road, shown to result in injury and damage to the taxpayers as individuals and as a class, the effort not being to control the board's discretion, but to require its proper exercise.

6. **Highways** ⬅⮞103 — **Comparative cheapness and desirability of other routes no objection to location.**

Comparative cheapness and desirability of construction of other routes *held* not to constitute a legal objection to construction of a road as located by the commissioners.

7. **Highways** ⬅⮞103—**Fact that more low, wet and marshy land would be crossed by road as located not ground of complaint.**

Fact that more low, wet, and marshy land would be crossed in building a road as located by the road commissioners than if it were built on other routes *held* not to afford legal ground of complaint, despite provisions of statute that no road should be laid out or constructed on such land, except where necessary to build directly across it.

8. **Highways** ⬅⮞107(1) — **Residence of two commissioners on road as located does not invalidate location.**

The fact that two members of a board of road commissioners lived on a road as located by them does not affect the validity of the board's action in determining to build the road, if the determination of the board locating the road was honest and fair.

9. **Highways** ⬅⮞103—**That construction would exhaust funds of bond issue immaterial.**

Portion of petition of taxpayers for injunction against construction of road by commissioners, alleging that building of the road would exhaust funds of bond issue and preclude building of other roads in vicinity of their lands, etc., *held* to present nothing as a basis for interference by the court.

10. **Mandamus** ⬅⮞72—**Not available as to discretionary matters.**

Mandamus is never available against an officer to compel performance of any act involving the exercise of official discretion.

Appeal from District Court, Hunt County; William Peerson, Judge.

Suit by J. P. Tippett and others against A. J. Gates and others. From judgment for defendants, plaintiffs appeal. Reversed and remanded.

Geo. S. Perkins and H. L. Carpenter, both of Greenville, for appellants.

Clark & Sweeton, of Greenville, for appellees.

HAMILTON, J. The Thirty-Third Legislature, by special enactment approved March 20, 1913, created a local road law for Hunt county, under the provisions of which law the county or any political subdivision thereof or defined district therein is empowered to issue bonds for the purpose of constructing and maintaining macadamized, graveled, or paved roads and turnpikes. The law provides for elections to be held in conformity with the methods and regulations prescribed by the terms, and if the result of any such election, at which only qualified voters who are property taxpayers can vote, is that at least two-thirds of the votes cast are for the bond issue, the commissioners' court is thereby authorized to execute the bonds in the

amount voted and to levy and collect taxes to pay the interest thereon and create a sinking fund for the redemption of the bonds. Special Laws 33d Leg. p. 190, vol. 16, Laws of Texas.

The law creates a body, in all instances where an election held under its provisions is favorable to the issuance of bonds, which body is designated "The Board of Permanent Road Commissioners." In the instance of the whole county being embraced in such election the board consists of the county judge, the members of the commissioners' court, the county auditor (if there be one), and two citizens from each commissioner's precinct. The election being for the issuance of bonds in a political subdivision or defined district of the county, the board is, in such case, constituted precisely as when the whole county is comprehended in the election, except that the citizens selected as members are only four in number, and only a commissioner in whose precinct such subdivision or defined district lies is a member.

The law provides the method of selecting these citizen members of the board, "who shall be men of wide business experience and good sound judgment."

Organization of the board is provided for, and it is given entire and exclusive control, charge, and management of laying out and constructing the roads to be built with the proceeds of the bonds. It is required to employ an engineer, who, under the direction and control of the board, has the duty, when the election has been held for the entire county, of making surveys of a system of roads for the county, radiating from the county seat as a base, such surveys to be upon direct lines and such alternate routes as the board may require. Upon the completion of such surveys the engineer is to file with the secretary of the board maps, profiles, plans, estimates, and specifications, and then, after full consideration and investigation, the board is to adopt such of them as seem best.

No contract can be let, and no work otherwise done upon the construction of roads until after the board has acted upon all the preliminary work of the engineer required by the board, and has adopted that relating to the roads which it determines to build after considering such plans, estimates, profiles, etc., which must be a part of any contract made for constructing, laying out, or opening roads.

It appears from the pleadings before us that road districts comprising only portions of Hunt county were created under this law, and roads constructed therein in conformity with its provisions. Subsequent to the construction of these roads in subdivisions or defined districts of the county the road law was amended by special act of the Thirty-Fifth Legislature approved February 10, 1917 (Loc. & Sp. Laws 1917, c. 8), to the effect that, whenever any political subdivision or defined district in Hunt county shall have issued bonds and constructed roads with their proceeds, and thereafter the entire county under said law issues its bonds or a road district in part composed of such existing district where roads are already constructed and composed in part of an additional area of the county issues bonds, such original district so included shall, in the manner provided in said amendment, be compensated for the roads already constructed.

On March 22, 1919, an election under the provisions of this law was held for the entire county, and a bond issue of $2,000,000 was thereby authorized, and the bonds were issued and sold, so that the proceeds of them were at the disposal of the road board for constructing roads.

On October 12, 1919, appellants filed an amended petition in the district court of Hunt county, seeking to restrain by injunction the construction of a certain road, which the board had determined to construct with a portion of the proceeds of the bonds from Greenville to Wolfe City, and, in effect, asking for a writ of mandamus to require the construction of a certain other road out of the funds.

Appellants alleged their interest in the litigation, claiming to be property tax paying citizens and freeholders of Hunt county, and suing for themselves as well as for other citizens of the county similarly situated. They allege, in effect, that prior to the election which resulted for the $2,000,000 bond issue, and which also nominated the board, now acting under selection made in the manner the road law directs, the members of the board entered a pre-election written pledge (exhibited as a part of plaintiff's petition), which pledge or agreement bound its signers in advance of their election to locate a road connecting Greenville and Wolfe City upon what is called the Whiterock route, and by it bound themselves, in advance of the election, to the effect that if the bond issue was voted and they were chosen as members of the board, they would vote in favor of locating and constructing one of the cardinal roads along the Whiterock route; and the allegation is made, in substance, that the act of the board in thus binding themselves was to preclude the exercise of their fair and honest judgment and discretion as members of the board in selecting routes; that it biased and prejudiced the board in favor of the Whiterock route, and prevented the members of the board from making investigation of and giving full consideration to the respective routes, and prevented a full, fair, and impartial exercise of their discretion and judgment; prevented a proper performance of their duties and powers as such

board, and proximately caused the Whiterock route to be selected. Said agreement, as it appears in the record, is as follows:

"We, the undersigned, as members of the road board of Hunt county, in case the prospective $2.000,000 bond issue carries, agree that we will vote to appropriate and expend in road district No. 2 an amount of money equal to or more than the amount of the bond issue heretofore voted by said district, and the amount of federal and state aid already assured to said district, and we likewise pledge ourselves to vote to appropriate and expend in road district No. 3 an amount of money equal to or more than the amount of the bond issue heretofore voted by said district, and the amount of federal and state aid already assured to said district; and we also pledge ourselves to vote to appropriate and expend in road district No. 4, an amount of money equal to or more than the amount of the bond issue heretofore voted by said district and the amount of federal and state aid already assured to said district.

"We further agree to vote to build the Jefferson Highway as already laid out, and the state highway from Kellogg through Kingston, Celeste to the Fannin county line south of Leonard; and we further agree in constructing roads in said district, to follow their plans for roads already projected in said districts as far as possible.

"Witness our hands this the 31st day of January, A. D. 1919, at Greenville, Texas."

It is further alleged that the board exercised no discretion, and refused to make an investigation and examination of the merits of the several routes surveyed by the engineer employed, as required by the law, and declined to consider the maps, surveys, profiles, plans, and specifications (and the facts shown thereby) prepared and submitted by the engineers, and failed to hear and consider facts as to which was the most nearly straight practical line having the shortest mileage and to the best interest of the public to adopt, but, on the contrary, disregarded all this, and capriciously, arbitrarily, and unreasonably adopted the Whiterock route; and after, in different portions of their petition, making allegations substantially embraced in the foregoing, appellants elsewhere therein allege that the acts of the board as to which they complain were capricious, and in constructive and actual fraud of the rights of themselves and the class of citizens similarly situated for whom they also sue.

Other portions of the petition, under the test of the rules of pleading, consist of immaterialities and conclusions, which need not be set out in this connection, but some of which we find it proper to consider elsewhere in disposing of the appeal.

Against the petition appellees interposed a general demurrer, and also presented 10 exceptions, which they designate as special exceptions, as to certain different portions of the petition, but most of which exceptions we consider general demurrers to parts of the petition.

The court sustained the exceptions to the petition, and the appellants present this appeal, urging that the pleadings were sufficient, and that accordingly the trial court erred in sustaining the exceptions.

Notwithstanding that the petition is subject to criticism in material respects, we have reached the conclusion that those different portions of it gathered together and embraced in the statement of that part of appellants' grounds of complaint above set forth sufficiently allege facts which, if established by legal evidence, would authorize a portion of the relief sought.

[1] We are required to construe the petition as a whole. So construing it, and considering together all parts of it, it is not obnoxious to a general demurrer, and, eliminating those parts which go out in response to special exceptions, a cause of action remains.

The appellees, members of the road board, under the law which provides for its creation, possess the widest discretion as to how and where roads may be built. But by the terms of that law they are under the necessity of exercising that discretion, and thereby discharging their duty to the public (the residents of the county), in terms of deliberate and conscientious judgment, drawn from thought, consideration, and discrimination over the facts, problems, and questions which arise and confront them in the processes of properly performing their functions. Besides, independent of any express suggestion in the law, the purpose for which the board exists and the nature of the object sought in creating and providing for it necessarily require that its conclusions and opinions, which are finally translated into the actual construction of certain roads, must express the processes of honest judgment and deliberation, free of restraint arising from any such circumstance or situation as a pre-election promise or agreement which might in any way be at variance or in conflict with such conclusions and opinions. Whether the Whiterock route is best for the construction of the road is not a question within the province of the court to determine. The situation with which the court is called upon to deal is that arising from the allegation that the board members precluded themselves by an agreement, made by them as candidates, while the process of choosing them was in operation, to build the Whiterock route; and that by this agreement they did in fact so bind themselves as not to be able, after they had been elected and had been properly and timely confronted with the problem of laying out a route, to exercise their discretion free from bias, and that they did not exercise any dis-

cretion at all, but, on the contrary, turned away from a consideration of the facts, ignored the information the engineer supplied under their direction, and gave no consideration to the public interest, and that their conduct was arbitrary, capricious, in fraud of the rights of plaintiffs, and constituted gross abuse of discretion.

Appellees insist that the agreement above quoted was authorized by the 1917 amendment to the road law; that appellants fail to plead that interest which would enable them to maintain a suit of this nature; and that their allegations, charging gross abuse of discretion and fraud, and that appellees acted arbitrarily and capriciously, were, under the law, mere conclusions of the pleader, and not supported by allegations of fact. They also make the contention, among others, that the suit is an attempt through the court to control the discretionary powers and actions of the board, and that no facts were alleged to enable the court to interfere.

While we are not to be understood as holding that the mere making of the agreement alleged would of itself estop the board from subsequently constructing the Whiterock road in the way the agreement calls for, still we do hold that the agreement or pledge, as such, is not authorized by the 1917 amendment to the law. This amendment, in our view, is intended only to serve the purpose of equitably and justly distributing the burden of the cost of roads, so that no portion of the county which has already used the proceeds of taxes imposed upon it to build roads shall, in addition to that burden, equally share the further burden of the entire county tax with those portions of the county which are charged only with the tax incident to the bond issue for the entire county. Its sole purpose is to provide that the citizens of all portions of Hunt county proportionally share the burdens and benefits incident to constructing roads.

Furthermore, such pre-election agreement cannot be recognized and upheld, because sound public policy and common experience in dealing with affairs of this nature oppose it. In construing the Navarro county road law, which is in hæc verba a copy of the law here involved as it was originally enacted, this court has held, consistent with precedent authority, that any agreement in advance of the formation of a road district by those who automatically become members of the road board, intrusted with the duty of locating roads as they deem best after exercising their judgment upon' the facts subsequent to assuming their powers, is void as against public policy. Tyree v. Road District No. 5, Navarro County, et al., 199 S. W. 646.

[2] Such agreement would not, of course, prevent appellees from constructing the road in a manner which might appear to be in

entire conformity with the agreement, provided such construction should not be shown by appellants to be but the carrying out of the agreement rather than the result of the exercise of discretion by the board after it came into existence under the law. Upon the trial of the case as to its merits under the issue properly joined by the pleadings, the presumption would exist that the board, after its creation, arrived at the decision to lay out and construct the road as a result of the honest and lawful exercise of its discretion, and appellants would have the burden of clearly establishing the contrary. But such presumption does not confront us in construing the petition in the light of the demurrers. Instead, the allegations not reached by special exception are taken as true.

[3] From the petition it is made to appear that the plaintiffs sue as members of a class of citizens having an interest in the question involved. The rule seems to be that when the contest involves the common or general interests of a section of the public to whom injury is alleged to have been done in such manner as set out in the petition in this case, the courts, following a rule of equity, recognize the right of the plaintiffs to maintain the suit. Hence the exception that the plaintiffs (appellants) have no such interest in the subject-matter as to entitle them to maintain the suit is not good.

[4] The allegations of gross abuse of discretion, of fraud, etc., we believe are not mere expressions of conclusions, for the reason that allegations of facts are set forth in portions of the pleadings, and these are referred to as constituting gross abuse of discretion and fraud.

While the rules marking out the realm of fact in pleading are easily stated, yet, under the state of the authorities, it is not easy to apply such rules in each case, and say whether or not the pleading conforms to them. We consider that, although the manner of alleging gross abuse of discretion, fraud, and arbitrariness in this case apparently renders the allegations mere conclusions at first glance, yet the reference made to other parts of the petition overcomes this fault. And in this connection attention is called to the distinct meaning of the word "fact" in the law of pleading as distinguished from its meaning in the law of evidence. Only "ultimate facts" need be stated in a pleading, and the details and minute circumstances constituting the evidence of such facts should be omitted. McCauley v. Long, 61 Tex. 74; Oliver v. Chapman, 15 Tex. 400; Van Alstyne v. Bertrand, 15 Tex. 177.

"In pleading fact has a different significance [from that in the law of evidence]. When it is said that the pleader must state facts, it is never intended to limit his statements to matters within his own knowledge; indeed the

opposite is his duty—to get all the information he can as to the case, to group and combine the various items according to their actual and legal relations, and draw therefrom correct deductions, and thus ascertain what the issuable facts in the case really are, and to state these issuable facts in his pleadings." Townes' Texas Pleading, 384.

[5] In answer to appellees' contention that the suit is an effort to control the discretion of the board through the court, we can only say that the courts of this state have, with seeming uniformity, recognized their right and duty to interfere by injunction in such cases when gross abuse of discretion, fraud, and perversity of will on the part of the officials are shown to result in injury and damage to those who complain for themselves and the class to which they belong. This is not an effort to control the discretion of the board, but is rather an effort only to require the exercise of it in a lawful way. In view of our action in reversing the case, we deem it appropriate to express our views on all parts of the petition with some particularity.

[6] We do not think any of those allegations comparing the Whiterock route with other routes, and alleging the comparative cheapness and desirability of construction of such other routes, of themselves constitute any legal ground of complaint. The expense of constructing any particular road, it seems to us, is not a proposition the courts can primarily concern themselves about. It is a proposition which belongs entirely to the board to exercise its discretion upon without interference. Besides, the allegations of this, the seventh section of the petition, are mere conclusions.

[7] Neither do we think the fact that more "low, wet, and marshy" land will be crossed in building the road appellants seek to restrain the board from building affords any legal ground of complaint, notwithstanding the provision of the law that no road shall be laid out or constructed upon such land, except where it is necessary to build directly across it. The Legislature did not intend by this provision to destroy or limit the discretion of the road board, as contended by appellants, and prescribe a rigid rule for road construction across such lands.

[8] The fact that two members of the road board live on the Whiterock road does not, under the law, affect the validity of the road board's action in determining to build the road. If an honest and a fair determination by the board, acting under the provisions of the road law, was to the effect that the public interests would be best served by the construction of such road, the incidental fact that some members of the board owned land adjoining the road could not invalidate their action. The allegation that this circumstance renders the action of the road board void is without merit.

[9] That portion of the petition which alleges that the building of the road, the construction of which appellants seek to restrain, will exhaust the funds of the bond issue, and thus preclude the building of certain roads in the vicinity of their lands, causing their lands to depreciate in value, and which also alleges that they acquired such lands, expecting a road to be constructed in their vicinity, presents nothing as a basis for interference by a court.

[10] The effect of the petition in this case is to seek both an injunction to prevent the construction of the "Whiterock" route and a mandamus to compel the construction of either of two others, called respectively the "Tidwell" route and the "Jacobia" route. The writ of mandamus is never available against an officer to compel the performance of any act involving the exercise of official discretion. When properly presented it is the province of the courts to declare whether or not a given set of facts constitute gross abuse of discretion, and in their equity power enjoin a wrongful course; but their jurisdiction cannot be exercised through the common-law process of mandamus to declare what should be the concrete result of a proper use of discretion. In the instant case this would be to substitute the court's judgment for that of the road board, and would be tantamount to usurping the powers and functions of that body.

The case is reversed and remanded for further proceedings in conformity with the views above expressed.

Reversed and remanded.