## LEWIS v. KELLY. (No. 8571.)

(Court of Civil Appeals of Texas. Dallas.
June 25, 1921. Rehearing Denied
Oct. 15, 1921.)

1. **Pleading ⬅11 — Employé's petition for share of profits held sufficient without alleging evidentiary facts.**

In employé's action for share of profits, petition alleging the gross profits, net profits, and expenses of employer, and stating that employer's books of accounts in employer's possession showed the profits and expenses to be in the amounts so alleged, *held* sufficient on special exceptions that allegations of net profits were mere conclusions, and that debits and credits should have been pleaded, since the detailed entries in the books were not matters to be pleaded, but were mere evidence tending to prove the facts alleged, and since the allegation as to details being shown by books in defendant's possession excused plaintiff from showing them in detailed form in the petition.

2. **Pleading ⬅11—Need not contain evidentiary facts.**

A pleading should not contain the evidentiary facts, but merely the ultimate facts, with such detail of statement as is necessary to apprise adversary of the facts he will be required to meet.

3. **Master and servant ⬅80(1) — Employé claiming share in profits not required to sue on stated account or for accounting.**

An employé entitled under his contract to share in profits was not required to sue on a stated account or for an accounting, but could bring action for specified amount due him.

4. **Appeal and error ⬅994(2), 1003—Weight of evidence and credibility of witnesses within sole province of jury.**

The court on appeal will not consider the weight of evidence and credibility of witnesses; such matters being within the sole province of the jury.

5. **Appeal and error ⬅1001(1) — Findings supported by evidence not disturbed.**

Where there is evidence to sustain findings of fact, they will not be disturbed on appeal.

Appeal from District Court, Dallas County; W. F. Whitehurst. Judge.

Suit by T. S. Kelly against A. S. Lewis. Judgment for plaintiff, and defendant appeals. Affirmed.

Short & Field, of Dallas, for appellant.

M. W. Townsend and Louis H. Porter, both of Dallas, for appellee.

HAMILTON, J. In June, 1917, appellee began to work for appellant in a partnership business conducted in the firm name of Lewis & Knight, under a contract providing that appellee should receive $150 per month salary and 10 per cent. of the net profits of the business. On the 30th of October, 1917, the partnership was dissolved, Lewis purchasing Knight's interest, and thereafter until March 1, 1918, appellee was in the service of appellant in the same capacity, but under a contract providing for a salary of $175 per month and 25 per cent. of the net profits of the business, which was conducted under the name of A. S. Lewis Grain Company.

Relations were severed between the parties on February 7, 1918, and on March 1, 1918, appellee, who had kept the books of the business continuously from the beginning of the employment, presented to appellant a statement of the business during the term of his contract, both original and amended, showing net profits from June 1, 1917, to October 30, 1917, to be $12,908.48, and showing net profits from October 30, 1917, to March 1, 1918, to be $11,908.86.

Appellee demanded payment of 10 per cent. of the alleged net profits during the period between June 1, 1917, and October 30, 1917, and 25 per cent. of the alleged net profits during the period between October 30, 1917, and March 1, 1918, after allowing a credit thereon of $560.60.

Appellant declined to comply with the demand, and appellee sued.

The case was submitted to a jury upon special issues, and, the special issues being answered in appellee's favor, judgment in accordance with such findings was entered that appellee recover of appellant the sum of $3,652.26. From this judgment appellant appeals.

The allegations of the petition material to a consideration of this appeal are substantially as follows:

"Plaintiff shows unto the court that during the aforesaid period beginning June 1, 1917, and ending October 30, 1917, the gross earnings of said firm of Lewis & Knight amounted to the sum of $25,103.36; that salaries paid by said firm during said period amounted to $2,987.65, and that all other expense, including taxes of said firm during said period, amounted to $3,-758.39, and that the net profits earned by said firm during said period amounted to $12,908.48, and by reason of the facts alleged the said firm of Lewis & Knight promised and became liable to pay the plaintiff 10 per cent. of said net profits, such 10 per cent. amounting to $1,290.84; that the defendant is in the exclusive possession of the books of said firm, which will better show the aforesaid gross earnings, expenses, and net profits, and notice is here given the defendant to produce all of said books upon the trial of this cause.

"The defendant, during the period beginning November 1, 1917, and ending March 1, 1918, earned and derived from his said business gross earnings amounting to $16,753.41; that the salary account of said business during said period amounted to $2,700.55, and that all other expenses, including taxes, amounted to $2,244.00, and the net profits earned and derived from his said business during said

period aggregated $11,908.86, and by reason of the facts above alleged the defendant promised and became liable to pay the plaintiff 25 per cent. of said net profits, said 25 per cent. amounting to $2,977.21.

"Plaintiff's salary was paid each month, and the defendant has paid plaintiff on the amount owing him as a credit on the net profits of the business the sum of $560.60, leaving a balance owing to the plaintiff by the defendant of $3,-707.45, for which plaintiff sues.

"Although said indebtedness is long since past due, the defendant, though often request-ed so to do, has failed and refused and still fails and refuses to pay the same or any part thereof, to plaintiff's great damage.

"The allegation herein that the profits of said firm from June 1 to October 30, 1917, amounted to $12,908.48 does not take into consideration a loss of $2,955 sustained by the firm of 'Lewis & Knight on the purchase and sale of something over 5,000 bushels of wheat purchased by the same firm before the United States government fixed the price of wheat, and sold by said firm after said government fixed the price of wheat. Said loss is not taken into consideration and is not deducted from the aggregate profits, because, when the defendant proposed to purchase said wheat, the plaintiff opposed said purchase because he told defendant he would quit if the same was made, at which time, and when said wheat was sold for a loss after the government fixed the price of same, the defendant promised the plaintiff that, if plaintiff would stay in his employ, the loss so sustained would come entirely out of his share of the profits of said business, and the plaintiff would not share in said loss, and for said consideration of the plaintiff remaining in the employ of the firm of Lewis & Knight it was agreed that plaintiff should not bear any part of such loss, and that the same should not be taken into consideration in determining the amount of plaintiff's share of the net profits of said business.

"Said statement of profits does not take into consideration items aggregating $900 credited to the defendant as salary upon the books of Lewis & Knight, because it was agreed between the plaintiff and the said firm that said salary account should not be taken into consideration in determining the plaintiff's share in the profits of said business."

Appellant answered by general demurrer, and also by special exceptions to the effect that the allegations of net profits were mere conclusions of the pleader; there being no allegations of items of credits and debits and no allegation that an accounting between the parties had been had. Subject to these demurrers, he answered, joining issue upon the contention asserted, and also by cross-action alleged that appellee owed him $560, which had been paid appellee under the mistaken belief that a profit had accrued from the operation of the business.

The appellant assigns as error the ruling of the court upon each of the demurrers above mentioned.

That the general demurrer ought to have been overruled, as it was we think is apparent, and the statement of this view without discussion is considered sufficient.

[1] We do not think there was error in the ruling upon the special exceptions, as contended by appellant. The averment was contained in the petition that the books showed the amounts of gross profits, net profits, and expenses to be as alleged; and the allegation that the books from which these alleged facts were derived were in appellant's possession and contained the evidential matter showing such facts, we think, rendered the allegations good against the special exception.

[2] The detailed entries in the books were not matters to be pleaded, but were rather only the evidence to establish the facts alleged. In no case should evidentiary facts be pleaded. The requirement the pleader is called upon to meet is to deduce from the details of evidence the ultimate facts to be proved by the evidence and use as the allegations of the pleading only such ultimate facts, resorting to such detail of statement as is necessary to apprise his adversary of the facts he will be required to meet. Wells v. Fairbank, 5 Tex. 585; Tippett v. Gates, 223 S. W. 705; Townes on Texas Pleading, 384. In the case of Wells v. Fairbank, supra, this language on the subject is found:

"The rule that the pleader must state the facts on which he intends to rely, as constituting his cause of action or ground of defense, is universal in its application in our pleadings, with the single exception of the plea of 'not guilty,' in the action of trespass to try title. But, although a statement of the facts is indispensable, it is not necessary to state such circumstances as constitute merely the evidence of those facts. The simple allegation of the fact is sufficient, without detailing a variety of minute circumstances which merely conduce to prove the truth of it. To acquire all those circumstances which constitute but the evidence of facts to be stated would lead to inconvenient detail and intolerable prolixity in pleading, and it would be to require that which must often be impracticable, and, if attempted, hazardous to the rights of the party; for it is not always possible for the pleader to know in advance precisely what his evidence will be; and a variance might be fatal to his cause. Hence the necessity of adhering to the rule that what is merely the evidence of facts need not be stated."

Granting, however, that this test is not met in appellant's allegations of amounts of profits, etc., yet the further allegation that the facts are better shown by the books in appellant's possession advises appellant that he has in his own exclusive keeping the evidence of the facts to be established, and in such relative situations of the parties the fullness which must ordinarily characterize a plaintiff's allegations is not required. Plaintiff's allegation that the facts are thus already in his adversary's exclusive possession excuses him from delineating them in

detailed form in the petition. Townes' Texas Pleading, 423.

[3] Nor do we think it was necessary in this character of suit to allege a stated account or else sue for an accounting. The relation between the parties was that of employer and employé, and not that of partnership. This relation had terminated, and appellee according to his allegations, had already exactly ascertained from the books of the business the amount due him for services, and for that amount he sued. Appellant has cited no decision or other authority holding that suits of this nature must either allege a stated or definitely agreed amount to be due or call for an accounting, and we do not think those cases in which parties have been required to seek an accounting are in point.

The following special issues were submitted to the jury, and answered as indicated:

"Special issue No. 1: Did the firm of Lewis & Knight make any net profits in the operation of its business at Dallas from June 1, 1917, to the dissolution of said firm? Answer 'Yes' or 'No.' Answer: Yes.

"Special issue No. 2: If you have answered the foregoing issue in the affirmative, then you will state what was the amount of net profits said firm made during said period in which plaintiff was to share? Answer: $11,308.

"Special issue No. 3: Did A. S. Lewis Grain Company make any net profits from the operation of its business from the dissolution of Lewis & Knight to the retirement of plaintiff from the service of said company in which plaintiff was to share? Answer this question 'Yes' or 'No.' Answer: Yes.

"Special issue No. 4: If you have answered the foregoing special issue 'Yes,' then you will answer this question, but, if you have answered 'No,' then you need not answer this question: What was the amount of the net profits of the said A. L. Lewis Grain Company during said period in which plaintiff was to share? Answer: $10,560.

"Special issue No. 5: If you have answered special issue No. 3 'No,' then you will answer this question: What was the amount of net loss of said business of A. S. Lewis Grain Company during said period? Answer: $———.

"Special issue No. 6: What amount, if any, of the net profits, if any, do you find to be due and owing to plaintiff, T. S. Kelly, under his contract for 10 per cent. of the net profits of said business. Answer: $1,130.

"Special issue No. 7: What amount, if any, of the net profits, if any, do you find to be due and owing to plaintiff, T. S. Kelly, under his contract for 25 per cent. of the net profits of said business? Answer: $2,640."

Counsel for appellant vigorously insists that the foregoing answers are contrary to the evidence.

The record as here presented contains a mass of figures taken from the books of the business by appellee and another taken from the books by an accountant employed by appellant to ascertain what condition with reference to profits and losses was reflected by the books. Certain items of loss are charged against the business by appellant which are not charged against it by appellee. The loss on a single grain transaction referred to in appellee's petition was omitted from the deductions against gross profits made by appellee. He swore, in conformity with his allegations, that a special agreement between him and Lewis, attending the transaction by which the latter made this deal, was that it was to be entirely independent of the business in which appellee was employed, and that the appellant would alone sustain whatever loss might arise in the transaction. Appellee is corroborated in this by W. M. Croithwaite, another employé of appellant's. On the other hand, appellant denies that such agreement was ever made, and contends that this item of loss is a proper charge against the business.

Appellant also contends that certain transactions relating to the purchase of oil interests in land and oil royalties in Louisiana are to be charged as losses against the business. This is disputed by appellee, who asserts that only the grain and feed business regularly conducted through the Dallas office was alone to be considered in estimating his share of the profits. There are conflicts and variances between the evidence on appellant's behalf and that for appellee as to items of loss and gain in freight claims, losses in weight, etc. Certain deductions for taxes, it appears, were not made by appellee in his estimate of the amount he claims and sues for. The amount of deduction for taxes was established by the evidence on appellant's behalf.

[4, 5] From the various items of proof, including variations and conflicts between the evidence for appellant and that for appellee, the jury has arrived at specific and definite findings of net profits, of which appellee is entitled to the alleged agreed shares. We are not prepared to say that the findings are unsupported by substantial evidence. The weight of evidence and credibility of witnesses were matters within the sole province of the jury. They chose to find that the special contract as to the 5,000 bushels grain deal was as claimed by appellee, and refused to believe the denial interposed by appellant against it. They chose to believe appellee's testimony to the effect that the Louisiana business and oil transactions were not to be figured in the estimate of the net profits upon which the percentage payments were to be made, although appellant testified to the contrary. And they chose to make all together such deductions from the amounts alleged by appellant as would leave the amounts which they found to be the net profits for the respective periods. We cannot assert that the record contains no evidence sufficient to sustain all the findings. This being so, the findings are conclusive. In such cir-

cumstances we are not warranted to disturb the conclusions of fact into which the jury resolved the evidence.

We will therefore affirm the judgment. Affirmed.