L. WATERBURY & Co. v. THE CITY OF LAREDO.

(Case No. 1424.)

60  519
80  267

1. CORPORATIONS.— If the powers of a corporation are not expressly, they are impliedly, restricted to such as are necessary for the attainment of the objects of its creation, and it can perform no act, make no contract, and incur no liability, but such as spring out of or are otherwise incidental to the purpose for which it was created.

2. SAME—MUNICIPAL CORPORATION.—The city of Laredo had a charter power to establish ferries. *Held:*

(1) That the city had power to employ counsel to represent it in a matter involving the establishment of a ferry.

(2) That from this resulted its authority to secure the attorneys' fees.

(3) The receipts from its ferry being a part of the general revenue of the city, it had the right to stipulate that a portion of that fund should be received by the attorney, before it reached the city treasury, as compensation for his services.

(4) A stipulation for increased compensation, after the first contract fixing his fee, will be enforced when not unreasonable, and when based on the performance of services not contemplated in the original contract.

(5) Such a contract, by which the attorney was to receive a certain portion of the earnings of the ferry, gave him no authority to interfere with the municipal control thereof; nor would the courts interfere except to prevent fraud or a gross abuse of discretion. Even then a receiver would only be appointed until the municipal authorities could again exercise their discretion.

(6) A court of equity has no power to direct the corporate authorities of a city how they shall exercise a discretion vested in them respecting the leasing of city property.

APPEAL from Bexar. Tried below before the Hon. Geo. H. Noonan.

Appellants, as the assignees of Edmund J. Davis, brought this suit against the city of Laredo, C. M. Macdonnel and Raymond Martin. The suit was based upon two contracts between Davis and the city of Laredo, the first dated January 25, 1876, by which the city employed Davis as an attorney-at-law to defend its possession and secure its rights to certain ferry privileges, the employment to continue for a term of five years, he to have one-third of the annual rent of the ferry for the term of five years. The second contract was made and entered into by Davis and the city on April 19, 1876. This was in the nature of a supplement, declaring the meaning of the first, enlarging and extending its terms to other matters, and stipulating that Davis should have as his compensation one-third of the annual rent of the ferry for a term of twenty years.

It was in substance alleged that Davis had fully performed all his

obligations and stipulations under the contract, and transferred his rights thereunder to appellants for a valuable consideration; that the city authorities combined and confederated with Macdonnel and Martin, and also others not known, to wrong, cheat and defraud appellants, and in pursuance thereof had repudiated the contract and refused to comply therewith, and also refused to pay appellants one-third of the rents or any part thereof, and denied that they had any right to it; that, in pursuance of said combination and confederacy, said authorities pretended to lease the ferry to their co-defendants for the term of five years for $5,050 per annum in Mexican money, whereas, at a fair renting, where there was proper competition, which would have been secured by proper notice of the time, place and terms of the leasing, the ferry would have rented for five years for the sum of $9,000 per annum.

Appellants sought to establish their rights under the contract; to have vacated and annulled the leasing; to recover the one-third of the revenues arising, then already due; to direct the manner in which said ferry privileges should be leased, and to enjoin the appellees from carrying out the lease, etc.

Appellees demurred generally and specially. The special demurrer claimed that the contract was *ultra vires;* that it was against public policy, and therefore void.

The cause was, by agreement, changed from the district court of Webb county to the district court of Bexar county.

October 10, 1881, the demurrers were sustained and the cause dismissed, with judgment against appellants for costs.

*Davis & Ruggles*, for appellants, cited: Charter of City of Laredo, Special Laws Second Legislature (1848), ch. 176, p. 337, secs. 1 and 5; City of Galveston *v.* Loonie, 54 Tex., 525; San Antonio *v.* Lewis, 9 Tex., 69; Williams *v.* Davidson, 43 Tex., 2; City of Brenham *v.* Becker, Commissioners of Appeals, December 14, 1881 (Law Journal, January 25, 1882); Memphis *v.* Brown, 20 Wall., 289, 321; 1 Dill. on Mun. Corp. (3d ed., 1881), § 479 and note 3; also, as showing what cases are *ultra vires*, id., sec. 149, and cases cited in note 1; also sec. 457, and cases cited in note 2; City of Memphis *v.* Adams, 9 Heisk., 518; Smith *v.* The Mayor of Sacramento, 13 Cal., 531; Hornblower *v.* Duden, 35 Cal., 664; State *ex rel.* Bermudez *v.* Heath, Mayor, etc., 20 La. Ann., 172; Hugg *v.* Camden, 29 N. J. Eq. (2 Stew.), 6; Bethune *v.* Hughes, 28 Ga., 560; Gale *v.* Kalamazoo, 23 Mich., 344; Clarke *v.* Lyon Co., 8 Nev., 181; Ellis *v.* Washoe Co., 7 Nev., 291; State *v.* Patterson, 40 N. J. Law, 186; Thatcher *v.* Jeff. Co., 13 Kan., 182.

*Jacob Waelder* and *A. L. McLeane,* for appellee, cited: Section 5 of the Charter of Laredo; Williams *v.* Davidson, 43 Tex., 34; 1 Dill. on Mun. Corp., sec. 61; City of Brenham *v.* Becker, 5 Tex. Law Jour., 294; Williams *v.* Davidson, 43 Tex., 34 *et seq.;* Green's Brice's Ultra Vires, 124 (note); Cool. Const. Lim., 206; Dill. on Mun. Corp., sec. 61; City of Eufala *v.* McNab, S. C. Ala., 1881 (Reporter, vol. 12, 484); Commonwealth *v.* Smith *et als.,* 10 Allen, 455; Richardson *et als. v.* Sibley, 11 Allen, 66.

WATTS, J. COM. APP.— In the court below it was successfully asserted that the contract sued on was *ultra vires;* that is, not such as the authorities of the city of Laredo had the power to make; also that the contract was void as being against public policy. And these are the questions for consideration and determination in the disposition of this appeal.

With respect to the power of corporations, the rule stated by the supreme court of the United States in Dartmouth College *v.* Woodward, 4 Wheat., 578, in these words, " A corporation being a mere creature of the law, possesses only those properties which the charter confers upon it, either expressly or as incidental to its very existence," is generally accepted in America.

A more elaborate, if not a more satisfactory, statement of the rule is given in Green's Brice's Ultra Vires, page 28, as follows: "It has been laid down that some, if not all, corporations exist for the attainment of certain objects only, and that, if their powers are not expressly, they are impliedly, restricted to such only as are necessary for the due attainment of those objects, and that, consequently, they can perform no acts, enter into no transactions and incur no liability but such as spring out of or are otherwise incidental to the purposes for which they have been created."

In reference to municipal corporations, Judge Cooley, in his work on Constitutional Limitations, p. 235, says: "The powers of these corporations are either expressed or implied. The former are those which the legislative act under which they exist confers in express terms; the latter are such as are necessary in order to carry into effect those expressly granted, and which must, therefore, be presumed to have been within the intention of the legislative grant."

The act of the legislature incorporating the city of Laredo, approved January 28, 1848, contains the following:

" Section 5. Be it further enacted, that the mayor and aldermen shall be invested with the following powers, viz., etc. Thirdly. They shall have authority to establish ferries; build levees, wharves

and landings; fix the rates, fees and rents of the same; establish free schools; erect public buildings for the use of the city; pave and improve the streets, and sell and dispose of any property belonging to the city for the benefit thereof."

From this the city would undoubtedly have the implied power to employ and contract with attorneys to prosecute or defend, in the courts of the county, the rights of the city with respect to the property mentioned in the above section.   The express powers therein granted, by necessity carry with them the implied power to employ counsel to represent the city in all cases where its rights in these particulars are the subject matter of the litigation.   And the power to employ counsel necessarily is attended with the power to secure their fee, so this is not done in a way that special trust funds are thereby diverted, or the legislative power is not attempted to be bartered away.

It seems that the revenues arising from the ferries authorized by the charter would constitute the general city fund, or a part of that fund, from which the expenses of the city government are to be defrayed.   In other words, it is not made to appear that such revenues are by the charter devoted to any particular object, so as to constitute a special trust fund.

Then undoubtedly it would be within the power of the city authorities to pay attorneys' fees out of that fund when it is in the city treasury.   And no valid reason is perceived why such authorities would not have the power to contract in advance of such revenue, and upon the basis that the attorney was to have for his services a certain portion thereof as the same might accrue.

The demurrer admits the truth of the allegations in the petition, and there is nothing apparent from the petition that would necessarily show that the contract was against public policy, or that the city authorities exceeded their power in making the same.   City of Palestine v. Barnes, 50 Tex., 549; Davis v. Burney, 58 Tex., 367; City of Laredo v. Macdonnell, 52 Tex., 521, and City of Laredo v. Martin, id., 559.

It seems that the contract made April 19, 1876, was a modification of the former contract, and was made after the relation of client and attorney was created.   It has been long the settled doctrine in courts of equity that such contracts ought to be closely scrutinized, because usually great confidence is reposed in the attorney, and he is in an attitude to exert a strong influence over the actions and interests of the client.   In the case of Rose v. Myreatt et al., 7 Yerger, 30, it was held that an attorney, while the relation subsists,

will not be permitted to stipulate for more than a reasonable remuneration for his services.

In Lecatt *v.* Sallee, 3 Porter, 115, it was held that an agreement entered into by a client with his attorney, after the latter had been employed, in respect to the particular business, by which the original contract is so varied as to secure greater compensation to the attorney than was first agreed upon, will not ordinarily be enforced.

Here the subsequent contract enlarging the first seems to have contemplated other business, and an increase in the labor to be performed. This being true, the appellants would be entitled to recover on the contract, unless it is made to appear that the amount contracted for is more than reasonable for the services to be performed, considering the manner in which it was to be paid, and in short all the attending circumstances; and if it should appear that a recovery cannot be had for the full amount contracted for, still appellants, as the assignees of Davis, would be entitled to recover the reasonable value of the services rendered by the latter under the employment.

There is nothing in the position that the city authorities attempted by the contract with Davis to barter away their legislative or municipal authority over the ferries. By the terms of the contract these authorities are to manage and control the property in every respect as before. In contemplation of law Davis contracted upon the basis of a continued control over the property. He acquired no right by reason of the contract to interfere with the management of the property by the city authorities, except to prevent a gross abuse of discretion upon their part in the management of the property.

In High on Injunctions, vol. 2, p. 813, it is said: " And no principle of equity jurisprudence is better established than that courts of equity will not sit in review of the proceedings of subordinate political or municipal tribunals; and that when matters are left to the discretion of such bodies, the exercise of that discretion in good faith is conclusive, and will not, in the absence of fraud, be disturbed." And on page 814 the same author says: "Nor will the discretion of the common council of a city in matters pertaining to their legislative functions be controlled by the writ of injunction. Hence the action of such a body in authorizing a purchase of lands, if within the powers conferred upon them by their charter, will not be enjoined because improvident, or because of the payment of an exorbitant price, in the absence of any allegations of fraud."

Here in the management of the property the city and appellants would have a common interest in having the property so managed as to yield the greatest revenue; and it would never be presumed

that the city authorities would, to the detriment of the city, and for the purpose of injuring appellants, so mismanage the property or grossly abuse their discretion with respect to it as to work a common injury to the city and appellants.

Even though fraud, or, what is its equivalent, a gross abuse of discretion with respect to the property, be clearly established as against the city authorities, still a court of equity would not interfere with management of the property by the city authorities, only to the extent that it would be absolutely necessary to protect appellants against the fraud or gross abuse of discretion. To do more would be an assumption upon the part of the court of a legislative discretion specially conferred upon the municipal government.

As to the lessees who are charged with conspiracy and fraud, a case might be made which would authorize the appointment of a receiver, but he could only control the property until such time as the municipal authorities should see proper to again exercise their discretion in taking charge of and managing the property or leasing the same in accordance with the corporate laws.

It would not be within the functions of a court of equity to direct the manner in which the corporate authorities should exercise the discretion vested in them, respecting the renting or leasing of the property. And to attempt to do so would be a usurpation upon the part of the court.

Resulting from these views, the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted December 14, 1883.]