GRAYSON COUNTY et al. v. HARRELL et al. (No. 1280.)

(Court of Civil Appeals of Texas. Amarillo. March 13, 1918. Rehearing Denied March 27, 1918.)

1. APPEAL AND ERROR ⊜719(4) — ASSIGNMENTS OF ERROR—FUNDAMENTAL ERROR.

Any error in overruling a general demurrer to the petition is fundamental error, which will be considered on appeal, even if the assignment of error would otherwise be insufficient because not set out in the motion for new trial.

2. COUNTIES ⊜196(3)—ROADS—BONDS—COMMISSIONERS' COURT DIVERTING FUNDS—INJUNCTION.

If the proposition for issuance by a county of bonds for improving roads submitted at an election, and voted on, specified the roads that would be improved, the commissioners' court could be enjoined from diverting the funds to the improvement of other and different roads.

3. COUNTIES ⊜183(1)—ROADS—BONDS—PURPOSE OF ELECTION—ORDER AND NOTICES.

Under Rev. St. 1911, arts. 627–633, providing for issuance by counties of bonds for roads; that on petition the commissioners' court shall order an election to determine whether they shall be issued, of which election notice by publication and posting shall be given for specified periods; and that the general laws relative to county bonds, when not in conflict with such articles, shall apply; and article 606 part of such general laws, providing that the proposition to be submitted for the issuance of bonds shall distinctly specify the purpose for which they are to be issued—the purpose of election is .to be determined from the order of the commissioners' court submitting the proposition, which purpose should appear in the official election notices, and be repeated in the order declaring the result of the election, without regard to mere statements or promises made by the commissioners during the campaign, as to roads to be improved.

4. INJUNCTION ⊜118(1) — PETITION — NEGATIVING INFERENCES.

Petition for injunction should. negative fair inferences of facts therefrom, under which facts plaintiff would not be entitled to the relief.

5. CONTRACTS ⊜108(2) — VALIDITY — PUBLIC POLICY.

Any agreement by the commissioners' court, tending to preclude it from full and free exercise of its discretion as to the roads to be improved with the proceeds of bonds voted to be issued for improvement of roads generally, would be against public policy.

6. INJUNCTION ⊜76 — ROADS — BONDS — IMPROVEMENT—ENJOINING COMMISSIONERS' COURT—FRAUD OR "ABUSE OF DISCRETION."

The discretionary power conferred on the commissioners' court to determine the roads to be improved with proceeds of bonds can be interfered with by injunction not for a bad mistake in judgment, but only where the proposed action is fraudulent or a gross abuse of discre-

---

tion, involving not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abuse of Discretion.]

7. MANDAMUS ⊂⇒90—COMMISSIONERS' COURT —IMPROVEMENT OF ROAD.

Even if abuse of discretion by the commissioners' court in improving a certain road with the proceeds of bonds issued for improving roads generally be shown, the court could at most enjoin such action, and not by mandamus force the improvement of a certain other road.

Appeal from District Court, Grayson County; W. M. Peck, Judge.

Action by W. M. Harrell and others against Grayson County and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

B. F. Gafford, of Sherman, for appellants. Wood, Jones & Hassell, of Sherman, for appellees.

BOYCE, J. Appellees, citizens and taxpayers of Grayson county, having a financial interest in the improvement of the Celtic road hereinafter mentioned, obtained judgment in the court below against Grayson county and the commissioners' court of said county, appellants, enjoining the expenditure of certain funds, the result of the sale of the road bonds of the county, in the improvement of what we shall call the "Luella road," and requiring by mandamus the expenditure of such funds in the improvement of the "Celtic road." Appellees object to the consideration of all of appellants' assignments of error, on the ground that they are not the same as set forth in the motion for new trial, and for many other reasons.

[1] The case is briefed by appellants in flagrant disregard of the statute and rules, and we do not think that we can rightly exercise any discretion to consider any of the assignments except the first. Appellees also object to the consideration of this assignment, but it is not material to determine whether this objection is well taken or not, since the assignment is as to the action of the court in overruling the general demurrer to plaintiffs' petition, and in any event would be considered a fundamental error. City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 519; Davis v. Parks, 157 S. W. 452. At a former day of the term we set aside a previous submission of the case, indicating that we would be compelled to disregard appellants' assignments except as they suggested fundamental error, and set the case for resubmission, requesting the parties to brief the questions of fundamental error suggested by us. Appellant has filed a brief covering not only these matters but other assignments. Under the circumstances, we do not think we should consider such brief except as it is in response to the request of the court. We therefore sustain all of appellees' exceptions

to the consideration of appellants' assignments except as stated, but will proceed to consider the case on the question of fundamental error.

The plaintiffs alleged that on the 9th day of March, 1915, the commissioners' court of Grayson county ordered an election to be held in said county on the 17th day of April, to determine whether or not the bonds for such county should be issued and sold for the purpose of constructing and building roads, etc., within said county; that said election resulted in favor of the issuance and sale of such bonds in the sum of $862,000; that the election was first ordered to be held on the 10th day of April, 1915, but that, by reason of the fact that the amount of the bond issue sought to be voted would not be sufficient to improve all of the roads of said county, the commissioners' court and the members thereof demanded that the petitioners for said election specify what roads would be improved for the public good, in order that the people might know where the money would be expended, and thereby vote intelligently, and in pursuance thereof the election was postponed from April 10, 1915, to April 17, 1915; that a body of citizens, known as the "Chamber of Commerce of the City of Sherman," with a committee of citizens from various parts of the county, were the promoters of the movement to bring about said bond election, and that said chamber of commerce and committee of citizens were requested by said commissioners' court to specify the roads that would be improved in the event the election should be in favor of the issuance of said bonds, and that in accordance with said request said chamber of commerce and committee of citizens "did prepare a list of the roads in said county, and a map showing their location, upon which it was proposed to expend said money"; that among the roads that were specified was what is known as the Celtic road, and that said road was reported to said commissioners' court as one of the roads that would be improved out of said funds; that said chamber of commerce and the said committee of citizens at divers times thereafter announced to the people in the vicinity of the Celtic road that it would be one of the roads improved, and that a map of such road prepared by the chamber of commerce and citizens' committee showing said road was exhibited to the plaintiffs and other persons living in the vicinity of said Celtic road; that after such announcement was made another map was made under the direction of the chamber of commerce, purporting to show the roads that would be improved, and that such map by mistake showed the Luella road, and not the Celtic road, as being one of the roads intended to be improved; that, upon complaint by the citizens of the Celtic neighborhood, the chamber of commerce and citizens' committee explained to

the plaintiffs and others interested in the Celtic road that such map was erroneous, and that the Celtic road, and not the Luella road, would be improved; that said promises and announcements were made with the consent and express wishes of the said commissioners' court and members thereof, and that the plaintiffs and other voters in the Celtic neighborhood believed said statements, and that they were authoritative, and relied thereon, and that but for such representations and the votes of the people of the Celtic community said election would not have carried; "that by reason of the promises made by the said Grayson county, its commissioners' court and the members thereof, in which it was announced by it that the roads would be improved as designated by the chamber of commerce and the citizens' committee, * * * said Grayson county and commissioners' court are estopped from improving the Luella road in lieu of and instead of the Celtic road." We will notice later the allegations as to another ground for injunction relied on by plaintiffs, but will first dispose of the sufficiency of the petition on the allegations already detailed.

[2-5] If the proposition submitted at the election and voted on by the electors specified the roads that would be improved, there can now be no doubt that the court could be enjoined from diverting the funds to the improvement of other and different roads. Moore v. Coffman (Sup.) 200 S. W. 374; Id., 189 S. W. 94. And the first question is, what was the proposition voted on? and, preliminary to this, how are we to determine what this proposition was? The election must have been held under the provisions of articles 627–633, R. S. These articles provide for the issuance, by counties and subdivisions thereof, of bonds for the purpose of constructing, maintaining, and operating macadamized, gravel, or paved roads, etc.; that upon petition the commissioners' court shall order an election to determine whether or not the bonds of such county shall be issued for the purpose of constructing such roads, and that notice of said election shall be given by publication for four weeks, and posting for three weeks, etc. Article 633 provides that the general laws relative to county bonds, when not in conflict with the provisions of this particular act on the subject, shall apply. Article 606, under general provisions for the regulation of the issue of bonds by counties, provides that "the proposition to be submitted for the issuance of bonds shall distinctly specify the purpose for which the bonds are to be issued," etc. Under these provisions of the statute, we take it that the purpose of the election is to be determined from the order of the commissioners' court submitting the proposition, which purpose should appear in the official election notices, and would be repeated in the order declaring the result of the election. The voters can have no official notice or knowledge of the proposition submitted to them, except as contained in these proceedings, which are the means designated by law of declaring and making known to the voters the proposition on which they are voting. It would be dangerous to hold that the commissioners' court could recite in its order for the election one purpose or proposition, and by some other action or order, not made a part thereof, and not referred to in the official notice of the election, inject into the proposition limitations or conditions so that the actual result of the election would be to carry a different proposition from that actually voted on according to the official record and notices of the proposition submitted. In the opinion of the Court of Civil Appeals and the Supreme Court in Moore v. Coffman, supra, which was a suit to prevent the diversion of the proceeds of the sale of bonds which were voted for the purpose of building a bridge on the Brazos river, "near the Bill Coffman crossing," to the building of a bridge at some other place, stress was placed on the fact that the election order and notices declared the specific purpose of the election as above stated, and a distinction is' drawn between such case and the case of Ardrey v. Zang, 60 Tex. Civ. App. 295, 127 S. W. 1116, where certain representations as to the location of certain school buildings proposed to be paid for by the sale of bonds were not embodied in the proposition submitted to the people to vote upon. See, also, City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 674.

It fairly appears from the petition that the order for the election was entered prior to the preparation of the list of roads and maps. It is not alleged that this list of roads and maps was ever filed with the commissioners' court, or that said court ever made any orders in reference to such matters; plaintiffs' reliance being placed upon "promises made by the said Grayson county, its commissioners' court, and the members thereof, that the roads would be improved as designated by the chamber of commerce," etc. It is not even alleged that these promises were the result of any official order of the court. While the petition is not as specific as it might be, it is a fair inference therefrom that the proposition submitted by the order for the election was general; that is, whether bonds should be issued for the purpose of constructing roads in the county, without particular designation, either in the election order, official notices of election, or order declaring the result. If these were not the facts, the pleader should have negatived these inferences. Gillis v. Rosenheimer, 64 Tex. 245; Paris v. Sturgeon, 50 Tex. Civ. App. 519, 110 S. W. 459; Weaver v. Emison, 153 S. W. 923; Kell Milling Co. v. Bank, 168 S. W. 46. What, then, would be the effect of the said promises, which were not a part of the election proposition, even if such promises were officially made and entered by

the commissioners' court? The power to provide for the improvement of the public roads is a legislative function, which has been delegated to the commissioners' court. This power is to be exercised for the general good of the public, and not in the interest of any community or individual. The court cannot delegate the exercise of this power and discretion to others, nor can it divest itself of such power by agreements in advance to exercise such discretion in any particular manner, and any agreement, the tendency of which is to preclude the court from a full and free exercise of its discretion as to the particular roads that were to be improved when the time should come to make such improvements, would be against public policy. Tyree v. Road District No. 5, 199 S. W. 648, 2d column; Dillon on Municipal Corporations, § 245.

We hold, therefore, that the proposition for which the people voted could only be sought through the official records and notices, and not through verbal or even written campaign promises, which did not have the official publication requisite to an election notice, and that such promises as are alleged by the plaintiff to have been made in this case would not bind the commissioners' court in the subsequent exercise of its discretion. The distinction between this holding and that in the case of Moore v. Coffman, supra, is that in such case there was no self-imposed limitation by the court of the subsequent exercise of its discretion, the election itself imposing this limitation upon the power of the court. Here the election itself appears to have contained no such limitations, but this was sought to be imposed by agreement made independent of the officially declared purpose of the election.

[6] The plaintiffs' petition also alleged that the said action of the commissioners' court in selecting the Luella road for improvement "is inequitable, unjust, and oppressive, in that a large number of the taxpayers in the vicinity of the Celtic road are situated in Grayson county road district No. 2, which had voted a special tax for a road improvement, so that the plaintiffs and others similarly situated were paying double taxation for improvement of roads and securing no return therefor; that this condition, with a few exceptions, did not apply to those persons living tributary to the Luella road." It was also alleged that there is about four times the amount of travel on the Celtic road as on the Luella road, and that by reason of the topography of the country the Luella road would be inaccessible to the travel that goes over the Celtic road. There is no allegation that the decision of the commissioners' court to improve the Luella road was the result of any corrupt, fraudulent, malicious, or improper motive on the part of the commissioners, or that their decision

was not made in good faith. The facts alleged, if true, only show a bad mistake in judgment. In cases of this kind, the discretionary power conferred upon the commissioners' court can only be interfered with by injunction where the proposed action is fraudulent. Waterbury v. City of Laredo, 60 Tex. 523; City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 676; Johnson v. Holland, 17 Tex. Civ. App. 210, 43 S. W. 71; High on Injunctions, § 1240; Dillon on Municipal Corporations, § 242. The authorities referred to by appellee, to wit, Currie v. Glasscock County, 179 S. W. 1097, and others, hold that injunction is proper where there is a gross abuse of discretion; but it has been held that "the abuse of discretion, to justify interference with the exercise of discretionary power, implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." Citizens' Street Ry. Co. v. Heath, 29 Ind. App. 395, 62 N. E. 107; Anderson's Law Dictionary. We do not think the facts alleged are sufficient to show such abuse of discretion or fraud.

[7] Even if an abuse of discretion in the matter of improvement of the Luella road was shown, the limit of the power of the court would be to enjoin such action, and the court could not, by mandamus in such case, force the improvement of the Celtic road. Durrett v. Robinson (Sup.) 131 S. W. 400; Beach v. McKay (Sup.) 191 S. W. 558; Jefferson v. Scott, 135 S. W. 705.

In order to be sure that we have not misconceived the effect of the allegations of plaintiffs' petition, we have referred to the facts introduced in support thereof, and find that our construction of the pleading fairly reflects the cause of action as made by the evidence. The promise to build the roads reported by the chamber of commerce and citizens' committee was made to a mass meeting of citizens at Sherman on April 5th or 6th, before the election on April 17th, the promise being made by the county judge after consultation with the commissioners, though the evidence is not definite as to what, if any, order was passed by the court, no evidence being offered as to any order thereon regularly voted upon by the court. The entire record discloses that these proceedings never became any part of the officially declared and entered purpose of the election or notice thereof.

For the reasons stated, the judgment is fundamentally erroneous, and it is accordingly reversed and the case remanded.