AUSTIN, Banking Com'r, et al., v. GUARANTY STATE BANK OF COPPERAS COVE et al. (No. 563.)

Court of Civil Appeals of Texas. Waco.
Sept. 29, 1927.

Rehearing Denied Nov. 3, 1927.

1. Guaranty ☞1—Bank's guaranty of payment of notes transferred held collateral promise to answer for payment of debt in case of default of makers in payment.

Under contract transferring and assigning notes by bank to bank which assumed payment of deposits of transferor bank and guaranteeing

payment of notes on named date if not paid by borrowers, guaranty was a collateral promise or undertaking to answer for payment of debt in case of default by persons liable in first instance for payment.

2. Bills and notes ☞396—Guaranty ☞70—Failure to present note for payment at maturity and give indorser notice of dishonor may discharge him, but does not discharge guarantor; "contract of indorsement;" "contract of guaranty."

A contract of indorsement is primarily that of transfer and a contract of guaranty is that of security, and unless note is promptly presented for payment at maturity and due notice of dishonor given indorser in reasonable time, he will generally be discharged absolutely, whereas such failure does not generally work absolute discharge of guarantor's liability.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Guaranty; Indorse—Indorsement.]

3. Guaranty ☞34—"Absolute guaranty" is unconditional undertaking that principal debtor will pay debt, and "conditional guaranty" imports happening of contingency other than debtor's default.

Guaranty may be absolute or conditional, an absolute guaranty being an unconditional undertaking by guarantor that principal debtor will pay debt, while conditional guaranty imports happening of contingency other than principal debtor's default.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Absolute Guaranty; Conditional Guaranty.]

4. Guaranty ☞34—"Guaranty of payment" is generally regarded as unconditional undertaking that principal debtor will pay.

A guaranty of payment is generally regarded as an unconditional undertaking that principal debtor will pay.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Guaranty of Payment.]

5. Guaranty ☞34—"Guaranty of collection" is undertaking that guarantor will pay if debt cannot be, by diligence, collected from principal debtor.

A guaranty of collection is regarded as undertaking that guarantor will pay if debt cannot, by exercise of proper diligence, be collected from principal debtor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Guaranty of Collection.]

6. Guaranty ☞34—Guaranty is usually deemed absolute unless its terms import some precedent to liability of guarantor.

A guaranty is usually deemed to be absolute unless its terms import some precedent to liability of guarantor.

7. Guaranty ☞35, 70—Guaranty of payment of notes held not conditional, and transferee's failure to exercise statutory diligence did not discharge guarantor.

Where bank transferred notes to bank, which assumed payment of transferor's depos-

itors and guaranteed payment of notes on named date if not paid by borrowers, such condition did not of itself render guaranty conditional on exercise of diligence by transferee, and failure of transferee to exercise statutory diligence in collection of notes did not of itself discharge transferor bank.

**8. Novation ⬳1—Fact that notes transferred to bank were subsequently indorsed by transferor's president held not to constitute new contract discharging original guaranty (Rev. St. 1925, art. 5934, § 49, and art. 5948, § 191).**

Where bank transferred notes to bank, which assumed to pay depositors of transferor bank, and guaranteed payment of notes on named date if not paid by borrowers, fact that indorsement of notes necessary to confer status of holder under Rev. St. 1925, art. 5934, § 49, and article 5948, § 191, and overlooked at time of transfer was subsequently made by president of transferor bank without consultation with bank's directors did not constitute a novation superseding or discharging original guaranty.

**9. Novation ⬳1—In order for subsequent contract to constitute "novation," parties must so intend.**

In order for subsequent contract to constitute novation and discharge prior one, it is necessary that both parties should so intend.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Novation.]

**10. Novation ⬳1—For subsequent contract to constitute "novation," new contract must differ from old and necessarily supersede it, or parties must so intend.**

In order for subsequent contract to constitute novation and discharge prior one, it must either appear that new contract is so radically different from old that it necessarily supersedes it as entirety, or there must be evidence to support finding that both parties so intended.

**11. Banks and banking ⬳77(1)—Appointing receiver of assets of bank at suit of directors in charge of bank's liquidation, not alleging insolvency or impending loss of assets, held error (Rev. St. 1925, arts. 539, 540, 1388, 2318).**

Where state bank went into voluntary liquidation under Rev. St. 1925, arts. 539, 540, and 1388, appointment of receiver in suit by directors in charge of liquidation was unauthorized under article 2318, where plaintiffs did not allege bank's insolvency or impending danger of injury to or loss of assets.

**12. Banks and banking ⬳47(2)—Judicial determination of insolvency of bank is not condition precedent to levy of assessment by banking commissioner to enforce stockholders' liability (Const. art. 16, § 16; Rev. St. 1925, arts. 358, 369, 455, 492, 535).**

Rev. St. 1925, arts. 455 and 492, do not require or contemplate that there shall be judicial determination of insolvency of a state bank before the banking commissioner, under articles 358, 369, shall be authorized to levy assessment to enforce liability of stockholders

under Const. art. 16, § 16, and Rev. St. 1925, art. 535.

**13. Banks and banking ⬳47(2)—Existence of necessity for levy of stockholders' liability is in discretion of banking commissioner (Const. art. 16, § 16; Rev. St. 1925, art. 535).**

Existence of a necessity for levy of stockholders' liability under Const. art. 16, § 16, and Rev. St. 1925, art. 535, and amount of such levy, are left to discretion of the banking commissioner.

Appeal from District Court, Coryell County; Joe H. Eidson, Judge.

Action by the Guaranty State Bank of Copperas Cove and others against Chas. O. Austin, Commissioner of Banking of the State of Texas, and others. From interlocutory orders granting a temporary injunction, defendants appeal. Orders reversed.

John W. Brady, John W. Goodwin, Claude Pollard, and R. M. Tilley, all of Austin, and John B. Daniels, of Temple, for appellants.

McClellan & Cross, of Gatesville, for appellees.

GALLAGHER, C. J. This is an appeal from an interlocutory order made on application of appellee Guaranty State Bank of Copperas Cove, Tex., joined by the several individuals composing its board of directors, by the judge of the district court of Coryell county in chambers, granting a temporary injunction restraining appellant Chas. O. Austin, commissioner of banking of the state of Texas, from taking over or attempting to take over the affairs of appellee bank and from levying or attempting to levy any assessment against the stockholders of said bank, or in any way interfering with the management thereof, and restraining appellant First State Bank of Copperas Cove from any further effort toward inducing the commissioner of banking to take over the affairs of appellee bank or to levy an assessment against the stockholders and from demanding anything of said bank or its officers until it has first exhausted its rights and remedies against the makers of certain notes, the payment of which notes had been guaranteed in writing by appellee bankk, and appointing a receiver to take charge of the affairs and assets of appellee Guaranty State Bank.

Both said banks were on February 27, 1926, and had been for some time prior thereto, engaged in business in Copperas Cove, Tex. On that date the First State Bank assumed the liability of the Guaranty State Bank to all its depositors and promised to pay the same in full. The consideration for such assumption was the payment of a small amount of cash and the delivery by the Guaranty State Bank to the First State Bank of notes of its customers, amounting in face value to the balance which said First State

---

Bank had promised to pay to such depositors after deducting such cash payment. The notes so delivered were 63 in number and aggregated $13,472.42. Three of said notes were past due at that time; one by its terms was to become due on November 1, 1926, and one on December 31, 1926. All the other notes delivered were by their terms to become due at various dates from March 1 to October 10, 1926, inclusive. Said notes were delivered on the 27th day of February, 1926, and accompanied by a list thereof, to which was attached the following agreement:

"The above described notes are this date transferred and assigned by the Guaranty State Bank, Copperas Cove, Texas, to the First State Bank, Copperas Cove, Texas, in consideration of the First State Bank assuming payment of deposits of Guaranty State Bank. The Guaranty State Bank hereby guarantees the payment of all these notes on November 1, 1926, if not paid by borrowers. These notes have been discounted at the rate of 10 per cent. per annum from this date to November 1, 1926. Any of them may be paid before November 1, 1926, at the option of Guaranty State Bank, and on the amount paid before that time by the Guaranty State Bank or the maker of the note held by the First State Bank, the Guaranty State Bank shall be credited by the First State Bank with discount unearned between the date of payment and November 1, 1926, at the rate of 10 per cent. per annum. All interest paid on notes after maturity shall be paid to the Guaranty State Bank.

"Signed at Copperas Cove, Texas, this 27th day of February, 1926. Jouett Allen, President Guaranty State Bank. F. F. Swift, Cashier Guaranty State Bank. [Bank Seal.]"

Said arrangement was consummated by the officers of said banks under authority of resolutions adopted by their respective boards of directors. After making said transfer the assets remaining in the hands of the Guaranty State Bank were the house and lot in Copperas Cove in which it had theretofore conducted its business, the fixtures used therein, and notes of the face value of $12,815.92. Thereupon the Guaranty State Bank ceased business as a bank, and on May 5, 1926, its stockholders adopted a resolution to close business, pay all creditors in full, and distribute the remaining assets proportionately among its stockholders, and authorized the directors to do everything necessary to carry said resolution into effect. All the foregoing proceedings were either expressly or tacitly approved by the commissioner of banking.

Shortly after said notes so listed were delivered to the First State Bank its officers called the attention of the president of the Guaranty State Bank to the fact that none of the same had been indorsed by his bank, and he thereupon indorsed the same. Nothing was said at the time with reference to the force and effect of such action, and it does not appear that the same was ever considered or authorized by the directors of the Guaranty State Bank. Approximately $7,000 of the notes so delivered to the First State Bank remained unpaid on the 1st day of November, 1926, and practically all the same remained unpaid at the time the orders appealed from herein were made. The First State Bank promptly demanded payment of the amount of said notes uncollected, as provided by the guaranty given it as before recited. The Guaranty State Bank failed to comply with said demand. The First State Bank finally complained to the banking commissioner of such failure. He, on February 16, 1927, notified the Guaranty State Bank that such complaint had been made and that unless it could pay the claim of the First State Bank or make some satisfactory adjustment of the same, that it would be his duty under the law to take charge of said bank and its assets and to levy an assessment on the stockholders thereof in an amount equal to 100 per cent. of the par value of the stock held by each of them, respectively. After some fruitless correspondence, he, on March 29, 1927, notified the Guaranty State Bank that he considered it his duty under the law to take immediate possession of all the assets of the bank and to proceed to liquidate the same.

The appellees, on the 30th day of March, 1927, presented their original petition herein to the judge of said court, and he indorsed thereon his fiat directing the clerk of said court to file and docket the same and to notify appellants that he would hear the same on April 14, 1927. A hearing thereon was had at the time appointed and the orders appealed from entered in pursuance thereof. Other facts will be stated in connection with the issues of law hereinafter discussed.

### Opinion.

[1-7] The nature of the liability of the Guaranty State Bank to the First State Bank, growing out of the execution and delivery of the written transfer and guaranty hereinbefore set out and the subsequent indorsement of the notes so transferred, is material in disposing of the other issues presented herein and must be first determined. A guaranty as applied to the transactions under consideration is a collateral promise or undertaking by one person to answer for the payment of a debt in case of the default of another person who is in the first instance liable for such payment. 28 C. J. p. 886, § 1. There is a well defined distinction between the contract of an indorser and that of a guarantor of commercial paper. A contract of indorsement is primarily that of transfer, and a contract of guaranty is that of security. The liability of a guarantor is more extensive than that of an indorser; unless the note is promptly presented for payment at maturity and due notice of dishonor given to

the indorser in a reasonable time, he will, except in certain specific instances, be discharged absolutely whether he has suffered any actual damage or not, whereas such failure does not as a general rule work an absolute discharge of a guarantor's liability. 28 C. J. p. 893, § 9; Burrow v. Zapp, 69 Tex. 474, 476, 6 S. W. 783; Walcott v. Carpenter, 63 Tex. Civ. App. 108, 132 S. W. 981, 983. A guaranty may be absolute or conditional. An absolute guaranty is an unconditional undertaking on the part of the guarantor that the principal debtor will pay the debt. A conditional guaranty imports the happening of some contingency other than the default of the principal debtor. 12 R. C. L. p. 1064, § 13. A guaranty of payment is generally regarded as absolute, that is, an unconditional undertaking that the principal debtor will pay, while a guaranty of collection is regarded as an undertaking that the guarantor will pay if the debt cannot by the exercise of proper diligence be collected from the principal debtor. 28 C. J. p. 896. A guaranty is usually deemed to be absolute unless its terms import some such precedent to the liability of the guarantor. 28 C. J. pp. 895, 896, § 11. The words of guaranty contained in the written transfer of the notes are as follows:

"The Guaranty Bank hereby guarantees the payment of all these notes on November 1, 1926, if not paid by the borrowers."

Appellants contend that the language so used constitutes an absolute guaranty, and appellees contend that the clause, "if not paid by the borrowers," makes said guaranty conditional. Such condition, under the authorities above cited, is inherent in every guaranty, whether expressed therein or not. It does not of itself render the guaranty under consideration conditional upon the exercise of diligence. 12 R. C. L. p. 1064, § 13; Shropshire v. Smith (Tex. Civ. App.) 37 S. W. 174. The original guaranty contained in the written transfer and assignment of the notes was absolute, and failure, if any, on the part of the First State Bank to exercise statutory diligence in the collection of the same, did not of itself alone discharge the Guaranty State Bank. Shropshire v. Smith, supra; Tobin Canning Co. v. Fraser, 81 Tex. 407, 411, 412, 17 S. W. 25; Slaughter v. Morton (Tex. Civ. App.) 185 S. W. 905, 907; Smith v. Cummer Mfg. Co. of Texas (Tex. Civ. App.) 223 S. W. 338, 339; El Paso Bank & Trust Co. v. First State Bank (Tex. Civ. App.) 202 S. W. 522, 524; McCarroll v. Red Diamond Clothing Co., 105 Ark. 443, 151 S. W. 1012, 43 L. R. A. (N. S.) 475; Miller v. Northern Brewery Co. (D. C.) 242 F. 165, 166, 167. The cases of Evans v. Bell, 45 Tex. 553, 555, 556, Shepard v. Phears, 35 Tex. 763, 768, 770, and Texas City Imp. Co. v. Griswold (Tex. Civ. App.) 41 S. W. 513, cited and relied upon by appellees, all involved a guaranty of collection and not of payment.

[8-10] Appellees further contend that regardless of the nature of the liability incurred by the execution and delivery of the original contract of transfer and guaranty, that the subsequent indorsement of said notes by the president of the Guaranty State Bank constituted a novation, that is, the substitution of a new obligation arising out of such indorsement for the former obligation arising out of the execution and delivery of said transfer and guaranty, and that such former obligation was thereby discharged. Said transfer and guaranty was executed and delivered for a valuable consideration and vested in the First State Bank such title to said notes as the Guaranty State Bank had therein, and the First State Bank thereby further acquired in addition thereto the right to have the Guaranty State Bank indorse the same. R. S. art. 5934, § 49. Such indorsement was necessary to confer the status of holder (R. S. art. 5948, § 191) and might have been demanded at the time of the transfer. If it had been so demanded it would have been the duty of the Guaranty State Bank to then and there comply with such demand. Had such notes been indorsed before delivery and delivered together with the separate transfer and guaranty, the validity of the latter could not have been questioned. A guaranty of payment and indorsement for transfer and to confer status are not necessarily inconsistent. There are numerous authorities holding that when a guaranty of payment is incorporated in an indorsement by the payee in a note, such indorsement is effective both as a guaranty and as an indorsement for transfer. Burrow v. Zapp, 69 Tex. 474, 475, 6 S. W. 783; 12 R. C. L. pp. 1060, 1061; Cady v. Bay City Land Co., 102 Or. 5, 201 P. 179, 182, par. 3, 21 A. L. R. 1367, 1372, 1373. The fact that such indorsement was overlooked at the time and was not demanded or made until four or five days thereafter ought not in itself to constitute the same a new contract superseding and discharging the original guaranty. In order for a subsequent contract to constitute a novation and discharge of a prior one, it is necessary that both parties should so intend. Such intention is never presumed. 29 Cyc. pp. 1134, 1135, par. (b); 20 R. C. L. p. 366, § 8; Studebaker Bros. Mfg. Co. v. Endom, 51 La. Ann. 1263, 26 So. 90, 72 Am. St. Rep. 489. It must either appear that the new contract is so radically different from the old that it necessarily supersedes the same as an entirety, or there must be sufficient evidence to support a finding that both parties so intended. 20 R. C. L. p. 366, §§ 7 and 8. There was no conversation connected with the indorsement of said notes which would support such a finding. We therefore conclude that the guaranty of payment em-

bodied in the original transfer was not extinguished by such indorsement.

[11] Appellants contend that the court erred in appointing a receiver of the assets of the Guaranty State Bank, and in that connection assail the sufficiency of both the pleadings of appellees. and the evidence adduced at the hearing to support such order. Appellees alleged that Copperas Cove is a small town with only a few hundred inhabitants and a limited trade territory; that adverse crop conditions had prevailed for two preceding years; and that there was not sufficient business to support both banks. Appellees then alleged the agreement between the Guaranty State Bank and the First State Bank, whereby the latter assumed and promised to pay the depositors of the former, and the former, in consideration thereof, transferred to the latter certain of its customers' notes and guaranteed the payment of the same as hereinbefore set out. They also alleged the subsequent indorsement of said notes and claimed that such indorsement constituted a novation and discharged the original guaranty; that the First State Bank failed to use diligence to collect said notes; and that they were discharged from liability thereon by reason of such failure. They further alleged that after making said agreement with the First State Bank they went into voluntary liquidation under the provisions of article 539 of the Revised Statutes, and began an active effort to close its affairs in the time and manner provided by article 540 thereof; that it was a matter of common knowledge that crops in that section had been a failure for two years in succession and that such fact, together with the low price of cotton, rendered it impossible either by persuasion or suit to collect said notes; that their efforts to close the affairs of said bank had continued long after the six months allowed by law, but that the commissioner of banking was then demanding that they pay all debts owed by them, distribute the remaining assets among the stockholders, and surrender their charter, and threatening if they did not do so at once that he would take over the affairs of said bank and levy a 100 per cent. stock assessment, as provided by law, against each and all of the stockholders of said bank; and further alleged that the First State Bank refused to exercise any diligence toward the collection of said notes, but was calling on the banking commissioner to force payment of its demands by levying such assessment. Appellees then alleged the assets. on hand substantially as hereinbefore set out, and alleged that the claim of the First State Bank was the only debt it owed and that the amount thereof was uncertain and contingent and could not be fixed until said bank had exhausted its remedies against the makers of said notes; that said Guaranty State Bank was solvent and had enough assets to pay within a reasonable time all its liabilities through its own agencies; that they had acted in the utmost good faith in their attempt to liquidate the affairs of said bank; and that they believed they had a right to do so under the provisions of article 1388 of the Revised Statutes, and asked the court to permit them to do so. They further alleged that they owned more than 50 per cent. of the stock of said bank, and asked the court to hear evidence and determine whether it would be to the best interest of all parties concerned for said individual appellees as trustees to continue in their efforts to wind up the affairs of the bank, and that if it should be determined by the court that it was not best for them to do so, then they expressed a willingness for the court to appoint a receiver. The individual appellees did not assert any claim or demand against said bank or its assets. They did not allege any mismanagement of the affairs of said bank. They, on the contrary, alleged that they were in possession of the assets of said bank and proceeding in a proper manner to comply with the law concerning the liquidation of banks, but that they were unable to do so because of their inability to collect the notes due the bank or to sell its business house and fixtures without sacrifice. They did not allege any impending danger of injury to or loss of said assets, and no reason whatever why the appointment of a receiver was necessary to conserve the same. Evidence was adduced at the hearing with reference to the collectability of said notes and the probable value of the business house and fixtures and their salability. The overwhelming preponderance of the evidence showed that none of the notes held by the First State Bank, the payment of which had been guaranteed, could be at that time collected by legal proceedings. The testimony introduced by appellees tended to show the makers of said notes were good, honest farmers, and that they paid their debts when they were able, and that in the opinion of its witness they would pay said notes when they made a sufficient crop and sold the same for a sufficient price to enable them to do so. The testimony showed that of the notes retained by the Guaranty State Bank only a comparatively small amount had been collected, and that all the same had been expended in meeting current expenses of liquidation. The testimony further showed that the banking house and fixtures could not be sold for enough to discharge the claim of the First State Bank. The order appointing the receiver directed him to take charge of the assets of the Guaranty State Bank, inventory and preserve the same and hold the same subject to the further orders of the court. He was further directed to notify the creditors of his appointment. No further

duty was imposed nor power conferred by such appointment. Seemingly, in recognition of the fact that none of said notes were at that time collectable, he was not even authorized to receive voluntary payments thereon.

This is not a suit by one group of stockholders against other stockholders and the board of directors of said bank to dissolve said corporation. The stockholders thereof had long before unanimously voted to dissolve the same and had authorized the individual appellees as its directors to liquidate the same according to law. This is essentially a suit by the corporation itself to have its assets placed in the hands of a receiver. The fact that the individuals composing its board of directors have joined it herein does not change the character thereof. They assert no individual rights and seek no individual relief separate and apart from the corporation, so far as the issue of the appointment of a receiver is concerned. Appellees do not allege that the corporation is insolvent. On the contrary, they allege that it is solvent. They do not allege that there is any impending danger of injury to or destruction of its assets. On the contrary, they allege that they themselves have possession of all of the same and that they are proceeding in the utmost good faith to wind up the business of said bank. No relief is sought against appellants except to prevent their taking steps to enforce the payment of the guaranty given by said bank to the First State Bank. Article 2318 of the Revised Statutes prohibits the appointment of a receiver of any joint stock or incorporated company, copartnership, or private person upon the petition of such joint stock or incorporated company, partnership, or person. Said article is applicable in this case, and the court erred in appointing a receiver on said petition. Floore v. Morgan (Tex. Civ. App.) 175 S. W. 737, 739, 740; Continental Trust Co. v. Brown (Tex. Civ. App.) 179 S. W. 939, 944; Bounds v. Stephenson (Tex. Civ. App.) 187 S. W. 1031, 1035 (writ refused); Kokernot v. Roos (Tex. Civ. App.) 189 S. W. 505, 506, 508; Davis v. Hudgins (Tex. Civ. App.) 225 S. W. 73, 77, 78; Rosenberg v. Titsa (Tex. Civ. App.) 278 S. W. 896, 899 (par. 6).

Appellants contend that the commissioner of banking has a right under our banking statutes to determine whether a bank in process of voluntary liquidation is or has become insolvent, and if he so determines, to take charge of the same, and that such determination involves the exercise of official discretion and that he is not subject to restraint by the courts in proceeding to act thereon. Appellees deny such contention. Article 368 of the Revised Statutes provides that the Attorney General, upon complaint of the commissioner of banking that any state bank has failed to comply with his orders in the premises or has been guilty of any irregularity or has suffered any serious loss, shall institute proceedings in a court of competent jurisdiction for appropriate relief. Article 371 authorizes the court in which such proceedings are instituted to appoint a receiver for such bank. The record in this case discloses that on April 12, 1927, prior to the hearing on appellees' petition, the Attorney General of this state, at the instance and upon the representations of the banking commissioner, filed a suit in the district court of Travis county at Austin to forfeit the charter of said bank, and alleged in his petition lawful grounds therefor and prayed for the appointment of a receiver for said bank. The record further shows that said court appointed a receiver therefor and that said receiver immediately qualified. Such being the case, we regard the contention at issue an abstract one and the consideration thereof not necessary to the disposition of this appeal.

[12] Appellants contend that the court erred in restraining the banking commissioner from levying an assessment upon the stockholders of the Guaranty State Bank. Our state Constitution (article 16, § 16), so far as here applicable, provides:

"The Legislature shall, by general laws, authorize the incorporation of corporate bodies with banking and discounting privileges, and shall provide for a system of state supervision, regulation and control of such bodies which will adequately protect and secure depositors and creditors thereof. Each shareholder of such corporate body incorporated in this state, so long as he owns shares therein * * * shall be personally liable for all debts of such corporate body * * * to an amount additional to the par value of such shares so owned * * * equal to the par value of such shares so owned. * * *"

Revised Statutes, art. 535, provides:

"If default shall be made in the payment of any debt or liability contracted by any bank * * * each stockholder * * * shall be personally liable for all debts of such corporation existing * * * at the date of such default, to an amount double the par value of such shares."

Revised Statutes, art. 455, provides:

"The commissioner (of banking) may, if necessary to pay the debts of such bank, enforce the individual liability of the stockholders."

Revised Statutes, art. 492, provides:

"All corporations created under this title are hereby declared to be charged with the public use, and shall be under state control and be subject to such legislation as the Legislature may enact for the government and regulation of such banking institutions in this state."

Revised Statutes, art. 358, authorizes and requires the banking commissioner to cause each banking corporation to be from time to time thoroughly and fully examined, and article 369 authorizes said commissioner to determine for administrative purposes whether

such bank is or is not insolvent. Said commissioner answered under oath in reply to appellee's petition that he had investigated the financial condition of the Guaranty State Bank and had found and determined in good faith that its property was not of the value alleged in said petition, but that the value thereof so alleged was grossly excessive; that it owed the First State Bank the debt alleged in the petition and was unable or unwilling to pay the same; that after adequate and careful investigation of the affairs of said bank and its property, he had become convinced and had concluded in good faith that said bank was then and there insolvent and that it was necessary to enforce the stockholders' personal liability in order to pay its debts.

We do not think that the banking statutes of our state require or contemplate that there shall be a judicial determination of the insolvency of a state bank before the banking commissioner shall be authorized to levy an assessment for the purpose of enforcing the constitutional and statutory liability of its stockholders. The Court of Civil Appeals for the Seventh District, in Collier v. Smith, 169 S. W. 1108, 1111, held that it was the purpose of the Legislature in enacting our banking laws to follow the trend of the National Banking Act, and that the banking commissioner in the matter of enforcing the individual liability of the stockholders possessed substantially the same power as the federal Comptroller of the Currency under said National Banking Act. The court in that case quoted from the case of Kennedy v. Gibson, 75 U. S. (8 Wall.) p. 505, 19 L. Ed. 476, as follows:

"It is for the Comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him. This action (making the assessment) on his part is indispensable, whenever the personal liability of the stockholders is sought to be enforced, and must precede the institution of the suit by the receiver. * * * It would be attended with injurious consequences to forbid action against the stockholders until the precise amount necessary to be collected shall be formally ascertained. This would greatly protract the final settlement, and might be attended with large losses by insolvency and otherwise in the intervening time. The amount must depend in part upon the solvency of the debtors and the validity of the claims. Time will be consumed in the application of these tests, and the results in many cases cannot be foreseen. * * * A speedy adjustment is necessary to the efficiency and utility of the law; the interest of the creditors require it, and it was the obvious policy and purpose of Congress to give it. If too

much be collected, it is provided by the statute, that any surplus which may remain after satisfying all demands against the association, shall be paid over to the stockholders. It is better they should pay more than may prove to be needed than that the evils of delay should be encountered."

The bank in that case was in the hands of the commissioner for liquidation. The trial court granted an injunction restraining him from levying and collecting an assessment upon the stockholders "until such time as it may be made to appear to the court that it shall be reasonably necessary to discharge the liabilities of said bank." The Court of Civil Appeals dissolved the injunction and held that the decisions of the Supreme Court of the United States construing the federal statutes on the subject of enforcing stockholders' liability furnished the rule by which the authority of the banking commissioner under our banking statutes should be measured and determined. The Supreme Court refused a writ of error in that case. The rule so announced has been consistently followed by our courts. Stringfellow v. Patterson (Tex. Civ. App.) 192 S. W. 555, 557 (writ refused); Brooks v. Austin (Tex. Civ. App.) 206 S. W. 723, 725, 726 (writ refused); Knollenberg v. Chapman (Tex. Civ. App.) 258 S. W. 547, 548–550 (writ refused); Austin v. Campbell (Tex. Civ. App.) 210 S. W. 277, 279, 280 (writ refused); Hall v. Tyler County (Tex. Civ. App.) 247 S. W. 582, 584; Kennedy v. Gibson, supra; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; Harris v. Briggs (C. C. A.) 264 F. 726, 727 et seq.

[13] The Constitution and laws of this state impose upon the stockholders of the Guaranty State Bank personal liability for the debts thereof, and provide that such liability shall be enforced by a levy by the banking commissioner, and, if not paid, by a suit to recover the amount of such levy in a court of competent jurisdiction. The existence of a necessity for such a levy and the amount thereof are left to his discretion. Such discretion was defined and explained in Board of Com. v. Lewis, 28 Colo. 378, 379, 65 P. 51, 52, as follows:

"Discretion, as applied to public functionaries, means the power or right of acting officially, according to what appears just and proper under the circumstances. * * * Courts will not interfere with the exercise of such discretionary authority unless it has been abused."

The rule with reference to exercising such discretionary power is laid down in 32 C. J. pp. 242, 243, § 384, as follows:

"Where public officials are intrusted with discretionary power in certain matters, their exercise of such discretion will not be controlled by injunction in the absence of any showing that their action is fraudulent or in bad faith, or that it amounts to an abuse of the discretion so vested in them; and this is so although the powers vested in such officers are quasi

judicial as well as administrative. * '* * Courts will not hear proofs and attempt to determine whether the discretion is wisely exercised or not. Where the law casts both a right and a duty upon an officer which involves exercise of discretion, the officer's conduct with respect to his duty or discretion is no more to be controlled by injunction than by mandamus. Interference in such a case would be to interfere with the ordinary functions of government. * * * An injunction may be issued in a case of gross abuse of discretion, but to constitute an abuse of such discretion it must appear that it was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable."

Our own Supreme Court, in Waterbury v. City of Laredo, 60 Tex. 519, 523, in discussing such discretion and the conclusiveness thereof, quoted with approval from High on Injunctions as follows:

"And no principle of equity jurisprudence is better established than that courts of equity will not sit in the review of the proceedings of subordinate political or municipal tribunals; and that when matters are left to the discretion of such bodies, the exercise of that discretion in good faith is conclusive, and will not, in the absence of fraud, be disturbed * * * 'nor will the discretion of the common council of a city in matters pertaining to their legislative functions be controlled by the writ of injunction * * * in the absence of any allegations of fraud.' "

The evidence is wholly insufficient to support a finding that the banking commissioner, in determining that the Guaranty State Bank was insolvent and that it was necessary in order to pay the debts of said bank to enforce the individual liability of its stockholders, acted fraudulently or in gross abuse of his discretion. Appellants' contention is sustained. Waterbury v. City of Laredo, supra; City of Austin v. Nalle, 85 Tex. 520, 549, 22 S. W. 668, 960; Kidder v. Hall, 113 Tex. 49, 55, 251 S. W. 497, 499; Board of Permanent Road Commissioners v. Johnson (Tex. Civ. App.) 231 S. W. 859, 860, 861; Grayson County v. Harrell (Tex. Civ. App.) 202 S. W. 160, 163 (writ refused); Stuckey v. Jones (Tex. Civ. App.) 240 S. W. 565, 567.

The orders appealed from are reversed.