

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

August 3, 1973

The Honorable Dr. J. W. Edgar
Commissioner of Education
Texas Education Agency
201 E. Eleventh Street
Austin, Texas 78701

Opinion No. H- 79

Re:   May the State Textbook
      Committee recommend and
      the State Board of Education
      adopt textbooks containing
      materials cooperatively
      developed by an independent
      laboratory but financed in
      part by the State, on which
      the State will realize royalties?

Dear Dr. Edgar:

Information submitted in connection with your opinion request reflects
that a contract was executed between the Texas Education Agency and South-
west Education Development Laboratory, a non-profit organization, for
the development of certain educational programs. Funds were made avail-
able under 20 U.S.C.A. 241e, which authorizes grants to State educational
agencies for educational programs and projects reaching migratory children.
All funds utilized were originally Federal grant funds, though a portion was
channeled through the State Treasury.

The research was satisfactorily conducted and the materials were devel-
oped to the satisfaction of the Texas Education Agency, the State thereby
receiving the principal things it had bargained for. The contract also con-
templated, but did not require, that the materials developed would be sub-
sequently published and marketed commercially. Under Federal Copyright
Guidelines, U.S.O.E., 35 F.R. 7317, royalties on materials published in
connection with a project financed by such Federal grants are to be distributed
to the co-sponsors in proportion to the co-sponsors' financial contribution
to the project. A co-sponsor can reject the royalty payments. The pub-
lisher under the Guidelines may obtain a copyright on the published material
for a five year period. During that time, the publisher alone can utilize
the materials.

The laboratory which developed the materials under the TEA contract solicited bids from over 100 publishers for the publication of these textbook materials; however, only one bid was received, and it came from a wholly-owned, non-profit subsidiary of the laboratory. The bid contained a proposal that any royalties paid be divided on a pro-rata basis among the entities involved in the transaction, including the Texas Education Agency. The laboratory contracted with the bidder to publish the material.

The Texas Education Agency did not join in the contract with the publisher, nor has it yet either agreed or refused to participate in royalties which might be realized from the sale of the published materials in this or other states. Since the publisher is the only one under the copyright that may utilize the materials developed, unless the publisher is allowed to compete for a textbook contract, the State of Texas will have no opportunity to utilize the materials it was instrumental in developing.

Your questions are:

"(1) Legally, may the State Textbook Committee recommend for adoption and the State Board of Education of this state adopt (for multiple textbook list purposes) textbooks submitted on bid by a publisher, which contain materials cooperatively developed with an independent laboratory, financed in part from Central Education Agency funds and the State (agency) to realize pro-rata royalties on all sales thereof.

"(2) Would foregoing royalties, provided permissible, alter the answer to question (1)?"

Your questions can be answered only in the context of "public policy." There is no statute which speaks specifically to the problem, but several sections of the Texas Education Code bear on it.

Subchapter B, Chapter 12, Title 2, Texas Education Code, V. T. C. S., § 12. ll(e) places a duty on the State Textbook Committee to recommend to the Commissioner of Education a complete list of textbooks which it approves for adoption. Textbook contracts are to be competitively bid except those concerning textbooks for the blind and visually handicapped and for kindergarten purposes, which may be let without bidding (§ § 12. 03 and 12. 04). Section 12.20 requires contractor affidavits negating improper interests on the part of Textbook Committee members or Board members.

The actions and contracts of the State Board of Education, a State agency, should not only be in harmony with the laws and Constitution of the State of Texas, but should also be consistent with the "public policy" of the State.

Contracts that interfere with or destroy the freedom of discretion that is required of public officers in the discharge of their official duties are impediments to the proper administration of government.   Contracts in their nature calculated to influence the action of public officers and the effect of which is to influence them one way or another, are against public policy. Meyers v. Walker, 276 S. W. 305 (Tex. Civ. App. , East. , 1925, no writ); 13 Tex. Jur. 2d,  Contracts, § 183.

Meyers v. Walker, supra, involved anticipated bids for city paving contracts.   Several of the bidders, prior to the contract award,  agreed among themselves and with the Mayor and City Commissioners that the successful bidder would bear the cost of several trips to distant cities made by the officials to inspect different types of paving.   Such trips were made and the successful bidder paid the expense.   A taxpayer brought suit to enjoin the sale of the paving bonds on grounds that the resulting contract was illegal.   The Court held the contract void, saying (at p. 307):

> "This trip of inspection was made, no doubt, with
> sincerest purpose and no intention of wrong, but the
> precedent is dangerous . . . .  The greatest danger in
> approving such practice is that one favor would lead
> to another, and loans, presents and like innocent gifts
> might lead to a rivalry in offers which would destroy
> competition in such matters and finally bring a season
> of corruption. "

We are of the opinion that this case, too, could establish a dangerous precedent.   The object of our textbook laws is to secure for the children of Texas the finest materials that can be obtained at reasonable cost to the appropriate school fund.   Decisions in that area ought not to be influenced by considerations of possible loss of profit to the State generally, or to some other fund because of the selection made.   Were it otherwise, prospective bidders might concentrate upon supplying such "fringe benefits" rather than upon producing the best and most economical textbooks possible.

In our opinion, in order that it might retain freedom to select the best materials for the use of Texas school children, the Texas Board of Education must decline to participate with private interests in the continuing royalties possibly to be realized from the sale of the materials developed. There is really no other choice, because if it retained an interest in such royalties, then it could not legitimately permit the publisher to bid for a contract. If it did not permit the publisher to bid, it would (possibly) prevent the selection of the best materials available. Thus, any contractual provision purportedly to allow the Texas Education Agency to participate with private interests in the royalties realized from publication of the materials would be void. See Waterbury v. City of Laredo, 5 S. W. 81 (Tex. 1887).

What we have said does not restrict the ability of the State Board of Education to utilize text materials prepared, developed and published by State agencies which do not occupy the position of private contractors. Nor would lump-sum settlement of accounts with private contractors prior to soliciting bids necessarily be prohibited. Public policy does not discourage economy or thrift, or the prudent use of available resources, but it does condemn arrangements which tend to subvert the meritorious selection of textbooks.

To your questions, then, we reply that in our opinion the State Textbook Committee may not recommend for adoption, nor may the State Board of Education adopt, textbooks upon which the State is to realize pro-rata royalties from the private publishers thereof, but when the State is not participating with private interests in the royalties from a textbook, the textbook may be properly recommended and adopted though it contains materials cooperatively developed with an independent laboratory, financed in part from Central Educational Agency funds.

In addition to the authorities cited above, see Grayson County v. Harrell, 202 S. W. 160 (Tex. Civ. App., Ama., 1918, writ ref'd.); Uvalde Construction Co. v. Shannon, 165 S. W. 2d 512 (Tex. Civ. App., East., 1942, no writ); Bryan v. Texas State Board of Education, 163 S. W. 2d 837 (Tex. Civ. App., El Paso, 1942, no writ); 13 Tex. Jur. 2d, Contracts, § 190; 17 Am. Jur. 2d, Contracts, 174 et seq.; Goodier v. Hamilton, 19 P. 2d 392 (Wash. 1933); Dodson v. McCurnin, 160 N. W. 927 (Iowa 1917).

## S U M M A R Y

The State Textbook Committee may not recommend for adoption, nor may the State Board of Education adopt, textbooks upon which the State is to realize pro-rata royalties from the private publishers thereof, but when the State is not participating with private interests in the royalties from a textbook, the textbook may be properly recommended and adopted though it contains materials cooperatively developed with an independent laboratory, financed in part from Central Educational Agency funds.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee